In the matter of JAMES WELSH, on Petition for *Habeas Corpus*.

The constitution does not restrict the power of the legislature as to the number of justices of the peace which may be created. That body may create as many districts for, and prescribe the jurisdiction of, justices of the peace as public policy requires, and without making their jurisdiction uniform.

The Recorder's Court of the city of Chicago is a constitutional tribunal, not repealed or affected by the Act of 27th February, 1854, providing for the better government of towns and cities.

THIS application for an *habeas corpus* was made to the court, in session at Mount Vernon, and the writ, by consent of the petitioner, was made returnable to the court in the second division.

The petition stated that Welsh and two others had been convicted, in the Recorder's Court of the city of Chicago, of larceny, and sentenced to the penitentiary for three years, from the 26th of September, 1855, and that he was now detained under such sentence and judgment. Upon the issuing of the writ, the warden of the penitentiary returned the facts in the case and submitted himself to the decision and order of the court. Welsh was remanded to the custody of the warden of the penitentiary, to serve out the residue of the time in conformity to the sentence.

W. T. BURGESS, for the Application.

T. HOYNE, *Contra*.

CATON, J. The questions presented in this case demanded, and have received, the most attentive consideration of this court. They do not in the least involve the question of the guilt or innocence of the prisoner, but relate entirely to the authority of the court before which he was tried.

The constitutionality of the Recorder's Court was sustained by this court, in the case of *Perry* v. *The People*, 14 Ill. 497. It was there determined that that court *was* an inferior local court of civil and criminal jurisdiction, which the legislature was authorized to establish within the cities of the State, by the first section of the fifth article of the constitution, and that the power there conferred might be well exercised by establishing a single court in a single city of the State; but that when the legislature undertook to exercise the same power in reference to other cities, by establishing courts in those cities, care would be taken to make this court and the courts thus to be created in other cities conform to each other in regard to their organization and jurisdiction; for that section of the constitution says that " such

11

courts shall have a uniform organization and jurisdiction in such cities." By the act of the 27th February, 1854, entitled "An act for the better government of towns and cities, and to amend the charters thereof," it is provided that, in each town or city in the State, the population of which shall not exceed six thousand, an officer shall be elected, styled "police magistrate;" and in each city exceeding six thousand, and not exceeding twelve thousand, two such officers shall be elected; and in cities exceeding twelve thousand, three are to be elected. These magistrates were to be elected at the next regular town or city election, and every four years thereafter. The third section of the act provides that "said police magistrates, when elected, shall be commissioned and qualified in the same manner as other justices of the peace are, and shall have in their respective counties the same jurisdiction, powers and emoluments as *other* justices of the peace in this State; and they shall also have jurisdiction in all cases arising under the ordinances of their respective towns and cities, and for breaches thereof, where the amount claimed does not exceed one hundred dollars," &c. The same section also provides for change of venue from one of these magistrates to another, in places where there are more than one; and in places where there is but one, then to the nearest justice of the peace, in the same manner as changes of venue are taken from one justice of the peace to another. The fourth section provides that the rules of practice before these magistrates shall be the same as before justices of the peace, except where it shall be changed by the charters of their respective towns or cities. The fifth section of the act provides that the city marshals, police constables and constables of the county, may serve the process issued by such magistrates. And the sixth section of the act provides that appeals shall be taken from their decisions, in the same manner as from the decisions of justices of the peace.

The passage of this act, it is insisted, was the exercise of the power conferred upon the legislature by the first section of the fifth article of the constitution, and established a class of inferior local courts in the several cities of the State, of a different organization and jurisdiction from the Recorder's Court of Chicago, which had been previously established under the same provision of the constitution; and as both cannot exist together under the constitution, it is insisted that the last act, by implication, repealed the former law establishing the Recorder's Court. If the officers created by the last act are anything more than justices of the peace,—if the courts thereby created are not justices' courts, then the legislature had no authority to pass the act, except by virtue of the clause referred to; and we should be

obliged to hold, either that the last act is void, or that the former has ceased to operate.

One thing is very certain, that the legislature did not intend to repeal and did not suppose they were repealing the Recorder's Court out of existence. Not only is there not the least intimation on the face of this law of an intention to supersede the Recorder's Court, but on the very next day the same legislature passed a law in terms amending the "act to establish the Recorder's Court of the city of Chicago," thereby recognizing its continued existence in the most authoritative and solemn form possible, as much so as if they had said that they did not intend and did not thereby repeal the law establishing the Recorder's Court. The legislature also on the same 28th day of February, passed another law, the seventh section of which makes provision for the punishment of criminals convicted in this same Recorder's Court. (Session Laws 1854, page 218.) I repeat, then, that it is very certain that there was no intention on the part of the legislature to repeal the former law, and if they did so, they did it against their express will—and yet if they intended to establish another city court under the clause of the constitution above referred to, of a different organization and jurisdiction from the Recorder's Court, they must have intended to repeal that court out of existence, or to have violated the constitution, or else they were ignorant of it. These last suppositions are totally inadmissible, and, as the first is plainly contradicted by their legislation on the subject, we are forced to the conclusion that the legislature created these police magistrates in the exercise of a power conferred by some other part of the constitution. That can only be found in their authority to create justices of the peace. As to these officers there is no limit placed by the constitution upon legislative power. They may create as many as they please, in such districts as they please, and prescribe their jurisdiction as they please, nor is it necessary that all the justices of the peace of the State should have a uniform jurisdiction, as in the case of the city court. There is nothing in the constitution to prohibit the legislature from giving to one justice of a town exclusive jurisdiction in criminal matters, another of civil actions *ex delicto*, and another of actions *ex contractu*. Here, at least, the constitution seems to presume that the legislature may be entrusted with some, though it be but a very limited discretion. We are thus led to the conclusion that the legislature passed the law with the intention to exercise their power to create justices of the peace, and that hence they supposed that they were creating nothing more than justices of the peace. They certainly intended to do nothing else unless they intended to transcend their constitutional powers. Now, are these magis-

trates anything but justices of the peace ? Did the legislature create a greater or a less magistrate than they intended ? Most clearly not. They have all the characteristics of a justice of the peace. They are elected and commissioned in the same way, have the same tenure of office and the same jurisdiction ; they have the same practice and rules of proceedings, and their judgments have the same force and are appealed from in the same way. But they are not called justices of the peace. They are designated as police magistrates. Can this, in a constitutional point of view, make any substantial difference? Suppose the statute had said " there shall be elected an officer in each of the towns and cities of this State," &c., and in all other respects provided as it now does, would any one doubt that such officer would have been nothing more or less than a justice of the peace ? Or, suppose he had been called a *magistrate* instead of an officer, would that have made any difference ? And if not, does the prefixing of the word *police* to the magistrate make a constitutional difference in the character of the officer created? Is it true that the constitutionality of a law has to be determined by a mere name, which may have been accidently or intentionally used, while the substance of the thing is manifest? Shall we find ourselves stickling about a name when the meaning of the legislature is perfectly obvious, and the results undeniably legitimate ? It would hardly comport with the dignity and solemnity expected of a tribunal of the last resort, when deliberating upon grave constitutional questions of the most momentous public importance, to fasten upon an unsubstantial cognomen, and let go the entire substance of the statute upon which we are called to adjudicate. If these magistrates had been called justices of the peace, no one would ever have thought of raising the question that they were justices of the peace in fact as well as in name. But there is in reality nothing in the name incompatible with that of justices of the peace. The word magistrate is but a generic term, embracing within its meaning justices of the peace as well as other civil officers, and there can be no constitutional objection to the legislature using this generic term, instead of the specific designation of the officer which they were creating. It is the substance and the life of the law we should regard when determining upon its legal effect. Nor is the qualifying term *police*, which is prefixed to the word magistrate, objectionable in a constitutional point of view. As before stated, it was competent for the legislature to designate any one or more of the justices of the peace in any town or city, who should have exclusive jurisdiction of complaints for violating the ordinances of the town or city, and had a law making such provision prefixed the adjective *police* to the magistrate

In the matter of James Welsh.

thus designated, it could hardly be contended, with a show of reason, that he would thereby have ceased to be a justice of the peace. Of this we have a striking example in the law passed under the constitution of 1818, creating probate justices of the peace. Under that constitution no judicial officers except justices of the peace could be elected by the people, and yet this law created *probate* justices of the peace, which were so called, as it was said in the act, "by way of eminence and distinction," and vested in them, in preference to all other justices of the peace, exclusive jurisdiction of all probate matters, and these officers were made elective by the people, and they exercised that jurisdiction for many years, and no question was ever raised of the constitutionality of the law.

But if a legislative designation could be supposed necessary to make these magistrates justices of the peace, even that is not wanting in the law now under consideration, for it provides that they "shall have in their respective counties, the same jurisdiction, powers and emoluments as *other* justices of the peace in this State." Other provisions of this law might be referred to in support of this view, as that which provides for a change of venue from these magistrates to other justices of the peace, which applies as well to suits brought for the violations of ordinances as to other cases, but we deem it unnecessary. We have no hesitation in saying that this law was passed, not in the exercise of the power conferred upon the legislature to establish inferior local courts of civil and criminal jurisdiction in the cities of this State, but under the power conferred upon them to create justices of the peace, and that it did not repeal by implication or supersede the law establishing the Recorder's Court of the city of Chicago.

There is but one other act to which it is necessary to advert, and that is the one of the sixth of February, 1855, by which the Court of Common Pleas of the city of Cairo was provided for. This act was no doubt passed in the exercise of the power conferred upon the legislature to establish inferior local courts in the cities, but the existence of that court is by no means inconsistent with the continuance of the Recorder's Court of the city of Chicago, and it was distinctly admitted on the argument that it was not thereby abolished, but that by force of the constitution the jurisdiction of the Recorder's Court may be extended so as to make it uniform with that of the Cairo court. But it is unnecessary to examine that question, for we are now dealing alone with the question of repeal, which it is not pretended was effected by this last act.

We are of opinion that the prisoner was convicted and sentenced by a court of competent jurisdiction, and that he must be

remanded to the custody of the warden of the penitentiary in execution of that sentence.

SKINNER, Justice. I concur in the judgment of the court remanding the prisoner.

*Application denied.*