## WALTER C. NEWBERRY
### v.
## MoBES BOWEN.

*Jurisdiction—Appeals—Police Magistrates.*

Appeals lie from police magistrates to the Circuit Court. The Act of June 13, 1887, has not changed the law in this regard.

[Opinion filed May 31, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Mr. GEORGE H. KETTELLE, for appellant.

Mr. M. S. BOWEN, for appellee.

BAILEY, J.   This was a suit by Bowen against Newberry before a police magistrate of the village of River Forrest, Cook County, where judgment was rendered January 8, 1886, in favor of the plaintiff, for $15 and costs. The defendant,

with a view of removing said cause into the Circuit Court by
appeal, filed his appeal bond in the office of the clerk of that
court within the time allowed by law for taking appeals from
judgments of justices of the peace, and thereupon the police
magistrate submitted to the Circuit Court a transcript of the
proceedings before him, and the same was duly filed. After-
ward the plaintiff entered his motion to dismiss the appeal on
the ground that there was, by law, no appeal to the Circuit
Court from a judgment of a police magistrate, which motion
was sustained and the appeal dismissed, with a *procedendo* to
the police magistrate. From this judgment the defendant
has appealed to this court.

The statute, as it stood at the time the judgment in ques-
tion was rendered, provided for appeals to the Circuit Court
from judgments of justices of the peace, but no mention was
made of police magistrates, and the only question is, whether
the term "justices of the peace," as used in said statute,
should be construed to include police magistrates.

The office of police magistrate was not mentioned by name
in either the Constitution of 1818, or in that of 1848. Section
8, Article IV, of the Constitution of 1818 provided that "a
competent number of justices of the peace shall be appointed
in each county in such manner as the General Assembly may
direct, whose time of service, power and duties shall be regu-
lated and defined by law." Section 1, Article V, of the Con-
stitution of 1848 disposed of the entire judicial power of the
State as follows: "The judicial power of the State shall be,
and is hereby, vested in one Supreme Court, in Circuit Courts,
in County Courts and in justices of the peace, provided
that inferior local courts of civil and criminal jurisdiction may
be established by the General Assembly in the cities of this
State; but such courts shall have a uniform organization and
jurisdiction in such cities." By Section 27 of the same Arti-
cle, it was provided that there should be elected in each
county in the State, in such districts as the General Assembly
might direct, by the qualified electors thereof, a competent
number of justices of the peace, who should hold their offices
for the term of four years, and until their successors should be

elected and qualified, and who should perform such duties and receive such compensation, and exercise such jurisdiction, as might be prescribed by law.

Under the Constitution of 1818 the entire State was divided into election precincts, and it was provided by statute that two justices of the peace should be elected in each precinct, except in those in which county seats were located, and that in such precincts three should be elected, such justices of the peace to hold their offices for the term of four years, and exercise certain prescribed civil and criminal jurisdiction. These provisions were continued in force under the Constitution of 1848, except that in counties which should adopt township organization, the townships were to become the election districts in which justices of the peace were to be elected, and the number to be elected in each township was to be based, to some extent, upon the population of the township.

In 1854, in consequence, as it may be presumed, of the growing need of an increased number of inferior magistrates in the incorporated cities and towns of the State, the General Assembly passed an act providing for the establishment in each of the cities of the State of an inferior court of civil and criminal jurisdiction, to be called the police magistrate's court, and also providing for the election in each of the incorporated towns and cities of the State, according to population, of from one to three officers, to be styled police magistrates, such officers to be elected, commissioned and qualified in the same manner, to hold their offices for the same term and to exercise the same jurisdiction as justices of the peace.

The foregoing act being challenged as unconstitutional was sustained, not as an exercise of the power conferred on the General Assemby to establish inferior courts of civil and criminal jurisdiction in the cities of the State, but of the power to create justices of the peace, and that a police magistrate was in reality a justice of the peace, the latter being a generic term of which the former is only a species. *Re* Welch, 17 Ill. 161. In People v. Matteson, 17 Ill. 167, it is held that while the statute provided for the election of police magistrates, the constitutional name of the office was justice of the

peace; and in Herkelrath v. Stookey, 58 Ill. 21, it is said: "This court has held that these officers are, under the Constitution and the law, justices of the peace. By changing the name of things, their nature or qualities are in no wise changed. Calling these officers magistrates does not render them any the less justices of the peace.

The Constitution of 1870, unlike the two preceding Constitutions, recognizes and names the office of police magistrate. Section 21, Article VI, is as follows: "Justices of the peace, police magistrates and constables, shall be elected in and for such districts as are or may be provided by law, and the jurisdiction of such justices of the peace and police magistrates shall be uniform.

The statutes passed since the adoption of the Constitution of 1870, bearing upon the question under consideration, are the following: Section 15, of Article XI, of the general law for the incorporation of cities and villages, provides that "there may be a police magistrate elected at a regular election in each village, who shall give bonds, qualify and have the same jurisdiction as other justices of the peace, and hold his office for four years, and until his successor is elected and qualified." An act to authorize the election of police magistrates in towns, cities and villages, was passed April 13, 1875, which provides that all towns, cities and villages in the State which have been incorporated under charters granted by special acts, or under a general act, when the law under which they are incorporated does not authorize the election of a police magistrate, should be authorized to elect one police magistrate at the first annual election of town, city or village officers, which should occur after the passage of said act, and quadriennially thereafter, such police magistrates to hold their offices for the same term, be commissioned and qualified, and have the same jurisdiction and fees as police magistrates of villages under the general law for the incorporating of cities and villages. 1 Starr & C. Ill. Stat. 244.

At the time of the adoption of the present Constitution, police magistrates were officers well known to our laws, having a well defined character and jurisdiction, and constituting a division

or class of the body of magistrates, known under the general designation of justices of the peace. They had the same jurisdiction, received the same compensation, were subject to the same rules of practice and procedure, and held their office for the same term as other justices of the peace, differing from other magistrates of the same class only in districts by which they were elected. The framers of the Constitution, in thus adopting without qualification the name of an office in existence and having a character and jurisdiction well defined by law, will be presumed to have used the name as descriptive of the office precisely as it then existed. If, instead of so doing, they had intended to create a new office, having different powers and jurisdiction, and forming a new and separate class of magistrates, they would doubtless have used language manifesting such intention. The only distinction between them, viz., the districts in which they were respectively elected, was recognized in the provision that they should both be elected in and for the districts which then were or thereafter might be provided by law. At the adoption of our previous Constitutions, police magistrates were not known to our judicial system, and, consequently, were not mentioned or provided for by either of those instruments. Having subsequently sprung, as they did, out of the necessities of our rapidly growing municipal corporations, they were adopted by our present Constitution precisely as it found them. No change was made in their jurisdiction, powers or duties, and, therefore, if they were justices of the peace before the adoption of the Constitution, they are equally so now. This clearly was the view taken by the Legislature in passing the statute above quoted in relation to the election of police magistrates in villages organized under the general law, where is provided that such magistrates shall have the " same jurisdiction as *other justices of the peace.*"

"Justices of the peace" then, being a generic term, which includes police magistrates as a subordinate class, the statute in force at the time the judgment in the present case was rendered providing for appeals from justices of the peace, included as well judgments rendered by police magistrates.

We are of the opinion, then, that the court below erred in holding that such appeal did not lie, and in dismissing the appeal for want of jurisdiction. No inference adverse to this conclusion is to be drawn from the fact that the Legislature at its last session saw fit to so amend the statute in relation to appeals from the judgments of justices of the peace as to make it apply in terms to police magistrates. Sufficient reasons for such amendment may be assigned without resorting to the theory of a legislative interpretation of the statute as it stood prior to the amendment.

The court below also erred in refusing to allow the defendant to amend his appeal bond. Said bond, as it seems, was defective in some respects in its description of the judgment appealed from, but it was not a nullity, and was subject to amendment, and the defendant should have been permitted to file a sufficient bond.

For the errors above pointed out, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*