# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

COMMISSIONERS OF HIGHWAYS OF THE TOWN OF GOSHEN

*v.*

WILLIAM A. JACKSON.

*Filed at Ottawa January 19, 1897.*

1. HIGHWAYS—*police magistrate may entertain proceedings to assess damages for opening road.* The jurisdiction of police magistrates and justices of the peace being uniform, the former may entertain proceedings to assess damages for opening a road, although section 41 of the Road act (Laws of 1883, p. 148,) designates the latter as the proper tribunal.

2. SAME—*final meeting of supervisors need not be held in the town where the road is located.* A final meeting of supervisors at which a road is ordered to be established is not invalid because held at a point outside the town in which the road is located.

3. SAME—*no demand on commissioners to open road and levy tax necessary before petitioning for mandamus.* The duty of highway commissioners to open a road and levy a tax therefor, as ordered by the supervisors, is public, resting upon them by virtue of their office, and no demand upon them is necessary after their default, before the filing of a petition for *mandamus.*

4. SAME—*land owners awarded damages need not part with land before receiving compensation.* Section 10 of the Eminent Domain act, (Rev. Stat. 1874, p. 477,) providing that petitioners may enter upon lands and the use of the same upon payment of the full compensation awarded, is to be construed *in pari materia* with the Road act.

165—2

5. SAME—*awarding damages on opening road does not create a township indebtedness.* It is no defense to *mandamus* to compel highway commissioners to open a road and levy a tax therefor, that the township indebtedness already exceeds the constitutional limit, as the awarding of damages to land owners for opening a road does not create an indebtedness.

6. SAME—*questions of necessity for road and burden on tax-payers not open in Supreme Court.* Whether the payment of damages for opening a road will be a great burden on tax-payers, or whether the public interest does not require a road, are questions upon which, under section 48 of the Road act, the determination of the highway commissioners, or, upon appeal, of the supervisors, is final.

7. MANDAMUS—*that prayer in mandamus petition is too broad is no objection on appeal.* An objection that the prayer in a petition for *mandamus* is too broad cannot be entertained on appeal, as a court is not obliged to grant the prayer in its entirety, but only so much thereof as the petitioner is entitled to.

8. SAME—*no objection to writ that the order of its commands is reversed.* A writ of *mandamus* commanding highway commissioners "to proceed with all lawful diligence to open and work such road for public travel and levy all necessary and lawful taxes to pay damages to land owners," etc., is not objectionable because the command to open the road comes before the command to levy the tax.

*Comrs. of Highways* v. *Jackson*, 61 Ill. App. 381, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Stark county; the Hon. N. E. WORTHINGTON, Judge, presiding.

B. F. THOMPSON, for appellants.

VICTOR G. FULLER, and ALLEN P. MILLER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The relator, William A. Jackson, and others, presented their petition to the highway commissioners of the town of Goshen for laying out a new road. The commissioners refused to grant the prayer of the petitioners, and Jackson appealed from their decision to three supervisors of the county. The supervisors granted the petition,

had the damages assessed, and ordered the road laid out by their final order, filed March 16, 1894. At their next semi-annual meeting, on the first Tuesday in September, 1894, the commissioners failed to levy any tax for the damages awarded for laying out this road, and in December, 1894, a written demand was served on them, requiring them "to proceed with all lawful diligence to open said road for public travel, and to levy all necessary taxes or issue bonds to pay the damages assessed to land owners by reason of laying out said road, and to do all acts and things necessary and lawful to be done for the speedy opening of such road." To this demand the commissioners paid no attention, and the relator, Jackson, filed his petition for *mandamus* in the Stark circuit court on December 13, 1894, to compel them to open and work said road and to levy necessary and lawful taxes for the payment of damages to land owners. The court awarded the writ, commanding said commissioners "to proceed with all lawful diligence to open and work such road for public travel, and levy all necessary and lawful taxes to pay damages to land owners, and to do all acts and things necessary and lawful to be done for the speedy opening of said road to public travel." From the judgment of the circuit court an appeal was taken to the Appellate Court for the Second District, which affirmed the decision of the lower court, and from this judgment of affirmance a further appeal was prosecuted to this court.

By stipulation of the parties it was conceded that the allegations of fact in the petition and answer were true, and that the cause should be determined upon the questions of the sufficiency of the demand made upon the commissioners, the jurisdiction of the police magistrate before whom the damages were assessed, the legality of the final meeting of the supervisors on appeal, which was held outside of the town of Goshen, and whether a tax could legally be levied to pay damages while the town was indebted to the constitutional limit.

*First*—The petition for an appeal was filed with, and the proceedings for the assessment of damages by a jury were had before, a police magistrate of the village of Toulon, which is the county seat of Stark county, and it was contended by the appellants that because the statute provided that such proceedings shall be taken before "some justice of the peace of the county," (Laws of 1883, sec. 41, p. 148,) a police magistrate had no jurisdiction. This contention is without merit. In the statute (Rev. Stat. 1874, chap. 24, art. 11, sec. 15,) provision is made for the election of police magistrates in villages, who shall "have the same jurisdiction as other justices of the peace;" and section 21, article 6, of the constitution, provides that "the jurisdiction of justices of the peace and police magistrates shall be uniform." This court has held in *Welsh's case,* 17 Ill. 161, that calling officers having the powers of justices of the peace, police magistrates, does not render them any less justices of the peace. (*Herkelrath* v. *Stookey,* 58 Ill. 21.) And in *Brown* v. *Jerome,* 102 Ill. 371, it was held that the constitution of 1870 "did not deprive them of any powers possessed generally by justices of the peace."

*Second*—The first meeting of the supervisors was held in the town of Goshen, but was adjourned to the court house in Toulon, about forty rods from the Goshen line, "because there was no convenient place for said hearing at the place appointed," but no objection was made to the legality of said adjourned meeting. The final meeting of the supervisors at which the road was ordered laid out was also held at the court house in Toulon, and the commissioners now contend that this meeting was illegal, and its proceedings null and void, because not held within the town of Goshen. The Road act of 1883 (sec. 60) provides that the justice of the peace "shall fix in such summons upon a time and place, near the road in question, when such appeal will be heard" by the supervisors. It cannot be successfully contended that forty rods is an

unreasonable distance from the road in question, and the statute does not require the place to be within the town, but "near the road in question." The Road act of 1879 (sec. 99) provides that the "supervisors shall fix upon a time and place when said appeal will be heard by them, which place shall be in the town where the road is located." (Laws of 1879, p. 279.) The present statute omits the latter clause, and gives the justice of the peace the power to fix time and place. This omission was evidently done with a purpose, and we are not at liberty to re-insert it in the statute.

But it is contended that the supervisors, on appeal, have no greater powers than the highway commissioners, and that for the purposes of said appeal they act as town officers, and not as county officers. The commissioners are directed in section 33 of the act of 1883 to "fix upon a time when and place where they will meet to examine the route of said road," and in section 47, to hold a meeting to finally determine the matter, without specifying anything as to the place of the meeting. In case damages are to be assessed, they are directed to present a certificate to "some justice of the peace of the county," who shall specify "a certain place" for the trial, (sec. 41,) without specifying that the justice or the place must be of the town in which the road is located. There is nothing in these provisions requiring action to be taken within the town, and even if it be conceded that the commissioners must meet in their own town, (on which we express no opinion,) it does not follow that the supervisors are thus restricted. The justice of the peace fixes their first meeting place, which shall be "near the road in question." Suppose the case was such that it could be finally settled at one meeting of the supervisors, as in the case of vacating a road, where the supervisors affirmed the decision of the commissioners, a meeting "near the road in question" would unquestionably be sufficient. We do not see any good reason why, when more meetings than

one are required, any subsequent meetings would not be legal if held "near the road in question."

*Third*—Was the demand made in apt time, and was there any demand necessary? Demand could not be made before breach of duty. Did any breach of duty occur, and if so, when? Section 15 of the act of 1883 provides: "When damages have been agreed upon, allowed or awarded for laying out * * * roads, * * * the amounts of such damages, not to exceed for any one year twenty cents on each $100 of the taxable property of the town, shall be included in the first succeeding tax levy provided for in section 13 of this act, and be in addition to the levy for roads and bridges." Section 17 provides: "Whenever damages have been allowed for roads or ditches, the commissioners may draw orders on their treasurer, payable only out of the tax to be levied for such roads or ditches, when the money shall be collected or received, to be given to persons damaged." It is clearly the duty of the commissioners, "when damages have been agreed upon, allowed or awarded for laying out roads," to include "the amounts of such damages, not to exceed for any one year twenty cents on each $100 of the taxable property of the town * * * in the first succeeding tax levy provided for in section 13." That section provides that such tax levy shall be made at the meeting of the commissioners immediately preceding the annual meeting of the county board. This meeting of the county board is to be held the second Tuesday of September. (Rev. Stat. 1874, chap. 34, sec. 49.) The semi-annual meeting of the commissioners shall be on the same day of meeting of the board of town auditors, (sec. 13, *supra,*) and the town auditors hold their semi-annual meeting on the Tuesday next preceding the annual meeting of the county board. (Rev. Stat. 1874, chap. 139, art. 13, sec. 3.) There can be but one tax levy in a year. (*St. Louis Nat. Stock Yards* v. *People,* 127 Ill. 22.) The commissioners failing to make any levy for the payment of the damages

for the road in controversy on the first Tuesday in September, 1894, they were thereafter in default. The relator could not have made a legal demand on them before, as he could not know that they would disregard the plain mandate of the law. (*City of Cairo* v. *Campbell*, 116 Ill. 305.) But a demand was not necessary. "If the duty, the performance of which is sought to be enforced, is a public duty, resting upon respondents by virtue of their office, it is well settled that no such demand and refusal are necessary." High on Ex. Legal Rem. sec. 41, cited in *People* v. *Board of Education*, 127 Ill. 613; *People* v. *Williams*, 145 id. 573.

*Fourth*—It is contended by the appellants that the town of Goshen is indebted beyond the constitutional limit, and that the court has no power to compel it to create an indebtedness contrary to law. The commissioners have no power to draw any orders for the payment of these damages unless there is a fund on hand for their payment or a tax levy has been made for that purpose. (Sec. 17, *supra; Comrs. of Highways* v. *Newell*, 80 Ill. 587; *Brauns* v. *Town of Peoria*, 82 id. 11; *Sullivan* v. *Comrs. of Highways*, 114 Ill. 262.) In *City of Springfield* v. *Edwards*, 84 Ill. 626, where the question of municipal indebtedness beyond the constitutional limit is fully considered, the court say (p. 633): "In this view we are only prepared to yield our assent to the rule recognized by the authorities referred to, with these qualifications: First, the tax appropriated must, at the time, be actually levied; second, by the legal effect of the contract between the corporation and the individual, made at the time of the appropriation, the appropriation and issuing and accepting of a warrant or order on the treasury for its payment must operate to prevent any liability to accrue on the contract against the corporation. The principle, as we understand, is, there is in such case no debt, because one thing is simply given and accepted in exchange for another. When the appropriation is made and the

warrant or order on the treasury for its payment is issued and accepted, the transaction is closed on the part of the corporation, leaving no future obligation, either absolute or contingent, upon it, whereby its debt may be increased." This opinion is cited in the well-considered case of *Law* v. *People*, 87 Ill. 385, and fully sustained in *Fuller* v. *Heath*, 89 id. 296.

The law provides how money to pay for such damages on account of laying out new roads shall be raised, and further expressly limits the commissioners, in drawing orders for the payment thereof, to orders "payable only out of the tax to be levied for such roads, when the money shall be collected or received, to be given to persons damaged." The very words of the statute seem to be framed to meet the decision in *City of Springfield* v. *Edwards, supra*. The awarding of damages for laying out a new road is not the creation of any debt, either present or contingent, but is in the nature of a sale for cash. The property owners to whom the damages are to be paid are not obliged to part with their land until they have received their damages, and the statute expressly provides, (Eminent Domain act, sec. 10,) that the petitioner may "enter upon such property, and the use of the same, upon payment of full compensation, as ascertained as aforesaid,"—which statute is to be construed *in pari materia* with the Road and Bridge act. (*Hyslop* v. *Finch*, 99 Ill. 174.) Whenever the commissioners tender the cash, or its equivalent, to the land owners, then, and not till then, will they be in a position to take possession of the road. Can it be said that the land owners could sue the town before possession taken? In *City of Chicago* v. *Barbian*, 80 Ill. 482, the court say (p. 485): "The rights of the parties are correlative and have a reciprocal relation, the existence of the one depending on the existence of the other. When the party seeking condemnation acquires a vested right in the property, the owner has a vested right in the compensation; but since no vested

right can be acquired in the property, without the owner's consent, until compensation shall be paid, it must follow there can be no vested right in the compensation until after the amount is paid." We cannot regard the proceeding as the creation of a debt.

*Fifth*—Objection is made to the language of the writ of *mandamus,* as awarded; also to the prayer of the petition, as being too broad. The court is not obliged to grant the prayer in its entirety, but only so much as the relator is shown to be entitled to. The objection to the language of the writ as awarded is, that it commands the commissioners to open and work said highway for public travel before it commands them to levy the tax to pay the damages assessed, and to the insertion of the word "work" in the writ. We apprehend that the order of the clauses in the writ is immaterial, inasmuch as it commands them "to proceed with all lawful diligence," etc., and "to do all acts and things necessary and lawful to be done for the speedy opening of said road for public travel." The insertion of the word "work" is immaterial, and does not deprive the commissioners of their discretion as to the manner of placing the road in a fit condition for travel.

It is finally contended by the appellants that the payment of these damages will be a great burden on the taxpayers of the town, and that no public interest requires the road in controversy. These are not questions for us to decide. The statute vests this power in the commissioners, and in the supervisors on appeal. (Laws of 1883, sec. 48, p. 149.)

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*