[Civil No. 1400.   Filed February 20, 1915.]

[146 Pac. 544.]

CITY OF GLOBE, a Municipal Corporation, G. W. M. CARVIL, Mayor of Said City of Globe, A. W. SYDNOR, I. O. LOWTHIAN, WAKEFALL KITZMILLER, ANDRE MAUREL, E. F. KNOWLES and T. G. LOYD, Members of the Common Council of the City of Globe, H. C. HOUSER, City Clerk of Said City, and R. L. PINYAN, City Marshal, Assessor and Tax Collector of Said City, Appellants, v. J. A. WILLIS, Appellee.

1. MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — REFERENDUM — CONSTITUTIONAL PROVISIONS.—The Sewer Act (Civ. Code 1913, pars. 1978–2025) provided that real property benefited by an improvement should be liable for its cost, created a special fund to be used only in paying for the improvement, and provided for the issuance of bonds for assessments payable out of such fund, and expressly exempted the city from other liability.  The mayor and common council by resolution declared that the public health required a sewer and septic tank as a general benefit to the whole city, and made the city a district for assessing the cost thereof.  Constitution, article 4, section 1, subdivision 8, reserves the referendum to the qualified electors of every city as to all local matters, and article 7, section 13, requires bond issues or special assessment to be submitted to a vote of property taxpayers to be qualified electors of the political subdivision "affected by such question," and article 9, section 6, authorizes local improvements by special assessments.  *Held*, that the city was not "affected" by the assessment so as to require submission to a referendum vote; the qualified electors being entitled to vote only on questions of a general character such as those relating to public health, police, etc.

2. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENT—ASSESSMENTS FOR BENEFITS—CONCLUSIVENESS.—Under Sewer Act (Civ. Code 1913, par. 1984), providing that any owner liable to be assessed for an improvement may make written protest against it or against the extent of the district and have a hearing by the city council, whose decision shall be final, paragraph 1985, providing that if no protests are filed, or if they are denied, the council shall have jurisdiction to order the proposed improvement, and paragraph 1988, subdivision 4, providing that when the improvement is assessed upon a district the assessment shall be upon each of the lots in proportion to the estimated benefits thereto, in the absence of any protest, a city's determination that a sewer and septic tank was required by the public

health, and was of a general benefit to the city, and constituting the city an assessment district, was final.

3. MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — LIABILITY OF PROPERTY.—Where a city is authorized to establish a sewer assessment district, it is not essential to the validity of an assessment that the property shall adjoin or abut on the line or street in which the sewer is laid.

4. MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENT — "LOCAL IMPROVEMENT"—CONSTITUTIONAL PROVISIONS.—Under Constitution, article 9, section 6, empowering cities to make local improvements by special assessments, a proposed sewer and septic tank declared by resolution of a city council to be of general benefit to the whole city was not a "local improvement," or a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits not generally enjoyed by property in the city, which could be made by special assessment, but one that could be made only by general assessment; and hence a special assessment therefor would be enjoined.

[As to validity of special assessment levied by front foot instead of according to benefit, see note in Ann. Cas. 1913A, 655.]

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed.

Mr. Neil M. Allred, for Appellants.

Messrs. Chalmers & Kent, *Amici Curiae.*

Mr. George R. Hill, Messrs. Rawlins & Little, Mr. A. C. McKillop and Mr. F. C. Jacobs, for Appellee.

ROSS, C. J.—The appellee, Willis, as plaintiff, brought his action against the appellant city to restrain its mayor, common council and certain of its administrative officers from constructing a main-trunk sanitary sewer and septic tank, and to enjoin said officers of the city from assessing, equalizing, levying and collecting taxes upon his property and the property of others in like situation to defray the expenses of said construction.

It is shown that the mayor and common council, on August 18, 1913, adopted a resolution of intention as provided by law, wherein it was declared that the public health, interest and convenience of the city of Globe and its people required such sewer and septic tank, and that the improvement was

of more than local or ordinary benefit, and was of general benefit to the whole city and its people, and made and constituted the city a district for the assessment of the costs thereof, providing for the issuance of interest-bearing bonds for assessments amounting to more than $25; that thereafter, on September 11, 1913, the mayor and common council passed another resolution ordering the construction of said sewer and septic tank as provided by law. To both of these resolutions appellee filed petitions of referendum praying that the question of the improvement proposed and ordered be submitted "to a vote of the qualified electors of said city" for their approval or rejection. It is alleged that the city authorities, notwithstanding said referendum, were proceeding to make the said improvement.

The appellants demurred to the complaint both specially and generally. The demurrers were overruled, and judgment was entered in favor of appellee as prayed.

The proceedings of the mayor and common council are conceded to have been regular and in conformity with the provisions of chapter 14, title 7, Civil Code, entitled "Construction of Sewers, Waterworks and Lighting Plants, by Cities and Towns, the Assessment of the Cost Thereof on Property Benefited, and the Issuance of Bonds to Represent Such Assessment." This chapter does not provide for a referendum in matters of local improvements by special assessments, but appellee contends that subdivision 8, section 1, article 4, of the state Constitution is applicable, and is authority for referring the question to the qualified electors of the city of Globe. It is as follows:

"The power of the initiative and the referendum are hereby further reserved to the qualified electors of every incorporated city, town, and county as to all local, city, town, or county matters on which incorporated cities, towns, and counties are or shall be empowered by general laws to legislate."

In construing this provision of the Constitution as it affects the question before us, it should be borne in mind that there are some subjects of legislation by a city in which all the residents are alike interested, and others that directly affect particular persons or property, and in which the citizenry generally is not concerned. Judge Dillon, Municipal Corporations, volume 1, section 24, says:

"If we analyze the complex powers usually conferred upon a municipality in this country at the present time, we shall discover that these are of two general classes, namely: (1) Those which relate to health, good government, efficient police, etc., in which all the inhabitants have an equal interest and ought to have an equal voice. (2) Those which directly involve the expenditure of money, and especially those relating to local improvements, the expense of which ultimately falls upon the property owners. As respects these, the controlling voice ought to be with those who have to bear the burden."

The undertaking by the council in this case was to impose on the real property situate in the city of Globe a special assessment to be apportioned according to benefits received. Only those persons owning realty in the city are affected, and they only, unless the Constitution provides a different rule, should be consulted. Those who pay no taxes and contribute nothing for the improvement certainly have no pecuniary interest in the matter.

It would be a reasonable and a workable construction of said provision of the Constitution if by it all the "qualified electors" of the city are held to have the power to invoke the referendum and to be entitled to vote thereon, when the questions involved are of a general character, such as those affecting the public health, good government or efficient police regulations, and we think that is the force and effect of such provision. If this provision be given the meaning urged by appellee, it runs counter to section 13, article 7, of the Constitution, reading as follows:

"Questions upon bond issues or special assessments shall be submitted to the vote of property taxpayers, who shall also in all respects be qualified electors of the state, and of the political subdivision thereof affected by such question."

According to this provision, where a special assessment is sought to be imposed, the question shall be submitted to qualified electors who are property taxpayers, and, while in terms eligibility to vote is not confined to those who pay property tax in the political subdivision affected by the question, unquestionably that is what it means. Therefore a "qualified elector," as used in the general referendum provision of the Constitution, would not be entitled to vote on the question

of a special assessment or bond issue without the additional qualifications of residence and ownership of taxable property within the city of Globe.

Bonds issued by a municipality as evidence of its obligations are included within the terms of this provision, as also special assessments for the payment of which it becomes liable, for in both cases the municipality, as such, is "affected by such question." But a municipality is not "affected" by a bond issue or a special assessment when it in no way incurs liability for their payment, even though it be constituted under the law the agency by and through which the bonds are issued or the special assessment is made. "Questions upon bond issues or special assessment"—that is, questions affecting the primary liability of the municipality—must be submitted to the property taxpayers therein, otherwise qualified as electors. Bond issues and special assessments that do not become a direct charge against the municipality, and do not increase its indebtedness, cannot be said to "affect" it, and are not under this provision of the Constitution to be submitted to a vote as therein prescribed. That the first state legislature understood section 13, article 7, to mean what we have indicated is clearly shown by its legislation. Chapter 15, title 7, Civil Code, provides that cities and towns may issue investment bonds as personal obligations, but before doing so the question must be submitted to and approved by a majority of the qualified electors in and for any such city who shall also be property taxpayers thereof. Chapter 9, title 11, paragraph 2736, authorizes school districts to issue bonds as personal obligations in certain cases, after the question is submitted to and approved by a majority of the *bona fide* taxpayers in all other respects qualified electors of the district. Chapter 2, title 52, paragraphs 5266–5285, provides that counties, school districts, cities, towns or other municipal corporations· may in certain contingencies issue bonds as personal obligations when thereto authorized by "a majority of the property taxpayers, who must also, in all respects, be qualified electors, therein voting at said election." A like provision is made for the issuing of bonds of irrigating districts in chapter 4, title 55.

All this legislation and section 13, article 7, of the Constitution irrefutably indicate the policy of leaving to those, and

those only, who bear the burdens, the right, in the first instance, to say whether the obligation shall be assumed by the municipality. They deny as certainly as it is possible, the right of the general elector to participate in an election involving the question of bond issues, and from what is said hereafter it will be seen that the general elector is not entitled to vote on "special assessments or special taxation of property benefited" for the purpose of making local improvements. The construction given by the legislature to section 13, article 7, of the Constitution is the reasonable and natural one, and fully preserves its meaning and purpose. Nor do we think it contravenes the general referendum provisions of the Constitution, but harmonizes and upholds both provisions, and gives the reasonable and fair intendment of both.

The Sewer Act (chapter 14, *supra*) provides that the real property benefited by the improvement shall be liable for all expenditures made for such improvement. It makes the amount assessed against each lot of land a lien thereon, and authorizes its sale for delinquency; creates a special fund, designated by the number or name of the assessment, which fund shall be used only in paying for improvement ordered; and provides for the issuance of serial bonds for assessments of $25 or over, and that the principal and interest thereof shall be paid to the city treasurer, "who shall keep a fund designated by the name of said bonds, . . . and under no circumstances shall said bonds or the interest thereon be paid out of any other fund." There is written on the face of the bond:

"This bond is payable exclusively from said fund, and neither the municipality nor any officer thereof is to be holden for payment otherwise of its principal or interest."

This is a legislative exemption of liability on the part of the city and its officers for special assessments, and at the same time a vesture of power by the legislature in the city authorities to burden the real property owner with the expense incurred in the improvement, in proportion to the benefits received.

In *Quill* v. *Indianapolis,* 124 Ind. 292, at page 298, 23 N. E. 788, at page 790 (7 L. R. A. 681), in passing upon an improvement act very similar to ours, the court said:

· "If the assessments become delinquent the remedy of the holders of the bonds or certificates is confined to the property; there is no liability against the city. The special fund provided for and the property are the sources from which the holders of the bonds and certificates must receive their pay, the city authorities acting merely as an agency for making and collecting the assessments, and as the custodian of the fund when the assessments are collected. In this they do not act as the agents of the city, but as special agents, to accomplish a public end. *Board etc.* v. *Fullen,* 111 Ind. 410 [12 N. E. 298, 13 N. E. 574].

"A fair interpretation of the statute requires that the character of the bonds, and the fact that they are payable out of a special street improvement fund, shall appear upon the face of the paper, thus making it apparent to the world that they are not to be regarded as the obligations of the corporation. While the common council and officers of the city are designated as the instruments to be used in executing the scheme devised, it· is apparent all the way through that the entire expense of constructing an improvement for which bonds may be issued is to be borne exclusively by the property benefited.

"In *Strieb* v. *Cox,* 111 Ind. 299 [12 N. E. 481], it was held that bonds issued by the board of county commissioners for the purpose of raising money to pay for the construction of a free gravel road do not constitute an indebtedness against the county within the inhibition of article 13 of the state Constitution. The principles which uphold that decision fully sustain our conclusion in this. See, also, *Board etc.* v. *Hill,* 115 Ind. 316 [16 N. E. 156].

"Merely issuing bonds or certificates which show upon their face that they are issued in the course of constructing a street improvement, and that they are payable out of a special fund to be derived from assessments upon the property bounding on the streets, is very far from creating a debt against the city. An indebtedness cannot arise unless there is either a legal, equitable or moral obligation to pay a sum of money to another, who occupies the relation of creditor, and who has a legal or moral right to call upon or constrain the debtor to pay. *State ex rel.* v. *Hawes,* 112 Ind. 323 [14 N. E. 87]. It is not always essential, in order to the existence of an indebtedness, that there should be an absolute legal right to coerce

payment, as in that sense the state could never become indebted. *Mayor* v. *Gill*, 31 Md. 375. It is, however, essential to the idea of a debt that an obligation should have arisen out of a contract, express or implied, which entitles the holder thereof unconditionally to receive from the promisor a sum of money which the latter is under a legal or moral duty to pay, without regard to any future contingency. Assessments for street improvements are upheld on the ground that the adjacent property upon which the cost of the improvement is assessed is enhanced in value to an amount equal to the sum assessed against it, and that the owners have received peculiar benefit which the citizens do not share in common. *Heick* v. *Voight*, 110 Ind. 279 [11 N. E. 306] ; *Ross* v. *Stackhouse*, 114 Ind. 200, 16 N. E. 501; *Hammett* v. *Philadelphia*, 65 Pa. 146 [3 Am. Rep. 615] ; *Chamberlain* v. *City of Cleveland*, 34 Ohio St. 551.

"The municipality, as such, is not benefited by the improvement, and there is, hence, under the law in question, neither a legal nor moral obligation to pay. The moral and legal duty of the city to pay depends upon the contingency or condition of the special fund out of which payment is to be made. If the officers of the city discharge the duties devolved upon them by statute, their power over the subject is exhausted. They are nowhere authorized to create an indebtedness against the city as such.

"In *Sackett* v. *City of New Albany*, 88 Ind. 473 [45 Am. Rep. 467], speaking in reference to the constitutional inhibition now under consideration, this court said: 'By "indebtedness," in this connection, we mean an agreement of some kind by the city to pay money where no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement.' Within the definition above stated it is abundantly clear that no indebtedness can possibly result against a city from the issuance of street improvement bonds."

The Washington supreme court, in discussing the liability for "special assessments," as those words appear in a provision of that state's Constitution which is identical with section 6, article 9, of our Constitution, in *Smith* v. *Seattle*, 25 Wash. 300, 313, 65 Pac. 612, 617, said:

"The contention of the appellant that, because the Constitution has limited the indebtedness of cities for supplying

the same with water, artificial light, and sewers to 5 per cent additional to the amount allowed for general indebtedness, local assessment districts cannot be created for constructing water-mains, is not sound. The Constitution limits the general indebtedness of cities; yet in the case of *Baker* v. *Seattle,* 2 Wash. 576, 27 Pac. 462, this court held that the indebtedness of local assessment districts for street improvements was not to be considered when computing the limit of municipal indebtedness. For the same reason the debts of local assessment districts for laying water-mains should not be considered as having any bearing on the limit of the indebtedness of cities for water, artificial light, and sewers.''

And in *Austin* v. *Seattle,* 2 Wash. 667, at page 673, 27 Pac. 557, at page 559, where the same question arose, the court said:

''It is a rule established by many authorities that, when a municipal corporation is about to order improvements of this class, it may do so without making itself primarily liable for the cost thereof. The city of Seattle has already done so to a large extent, and this court has held that the unpaid warrants issued by it, drawn upon, and payable out of, special assessment funds, do not constitute a part of its municipal indebtedness, within the meaning of the Constitution (*Baker* v. *Seattle,* 2 Wash. 576 [27 Pac. 462]), but it is competent for such a corporation to make itself primarily liable for such improvements, and to make their costs a part of its debt.''

In Iowa, under a local improvement plan somewhat like ours, the court, in *Grunewald* v. *Cedar Rapids,* 118 Iowa, 222, 226, 91 N. W. 1059, 1060, said:

''The second is that this tax, if a debt, is not an obligation of the city, but of each individual property holder. The municipality is bound to levy, collect, and pay over, and is answerable for nothing save the performance of these duties. See *Ft. Dodge Electric Light & Power Co.* v. *City of Ft. Dodge,* 115 Iowa, 568, 89 N. W. 7. It is not obligated to pay the money from any other source. Its duties end in compelling others to pay. Beyond this its obligation does not extend. In *Water Co.* v. *Woodward,* 49 Iowa, 58—a somewhat similar case in principle—the court said: 'The obligation of the city is to levy the tax, and see that the amount collected is applied to the specified purposes. If the special

fund legally provided is not sufficient, then it may be well said the deficiency is not payable by the city, and it is difficult to conceive that there can be such a thing as a debt which is never to be paid. No burden is created thereby, and there cannot be such indebtedness.' " 2 Page & Jones, Taxation by Assessment, sec. 1504.

In *McGilvery* v. *Lewiston,* 13 Idaho, 338, 347, 90 Pac. 348, 349, the court used this language:

"From an examination and consideration of the cases cited, it would seem that the courts have quite generally held that such obligations required to be paid out of special assessments levied against the property particularly benefited are not an 'indebtedness or liability' within the contemplation of the constitutional provision, and that the same may be incurred without submission to a vote of the people. In other words, it is held that the legislature has plenary power in such matters, and that, if the statutory provisions are followed and complied with, there can be no legal and valid cause of complaint upon the part of a property owner affected by the assessment. The following are some of the principal cases cited to this effect: *People* v. *Pacheco,* 27 Cal. 218; *Meyer* v. *City and County of San Francisco,* 150 Cal. 131, 10 L. R. A. (N. S.) 110, 88 Pac. 722; *Little* v. *City of Portland,* 26 Or. 235, 37 Pac. 911; *Atkinson* v. *City of Great Falls,* 16 Mont. 372, 40 Pac. 877; *City of Litchfield* v. *Ballou,* 114 U. S. 190, 29 L. Ed. 132, 5 Sup. Ct. Rep. 820; Cooley's Constitutional Limitations, 7th ed., 92; *Davis* v. *City of Des Moines,* 71 Iowa, 500, 32 N. W. 470; *Corey* v. *City of Ft. Dodge,* 133 Iowa, 666, 111 N. W. 6; *Tuttle* v. *Polk,* 92 Iowa, 433, 60 N. W. 733; *City of Clinton* v. *Walliker,* 98 Iowa, 655, 68 N. W. 431; *Quill* v. *City of Indianapolis,* 124 Ind. 292, 7 L. R. A. 681, 23 N. E. 788; 1 Dillon on Municipal Corporations, 477; *Winston* v. *City of Spokane,* 12 Wash. 524, 41 Pac. 888; *Smith* v. *City of Seattle,* 25 Wash. 300, 65 Pac. 612; *Commissioners of Highways of Goshen* v. *Jackson,* 165 Ill. 17, 45 N. E. 1000; *Kansas City* v. *Ward,* 134 Mo. 172, 35 S. W. 600; 1 Abbott on Municipal Corporations, sec. 340; 25 Am. & Eng. Ency. of Law, 1233; *State* v. *Moss,* 44 Wash. 91, 86 Pac. 1129; *German-American Sav. Bank* v. *City of Spokane,* 17 Wash. 315, 38 L. R. A. 259, 49 Pac. 542; *Rhode Island Mortgage & Trust Co.* v. *City of Spokane,* 19 Wash. 616, 53 Pac. 1104; Gray on

Limitations of Taxing Power, sec. 2102; *City of Valparaiso* v. *Gardner*, 97 Ind. 1, 49 Am. Rep. 416; *Swanson* v. *City of Ottumwa*, 118 Iowa, 161, 59 L. R. A. 620, 91 N. W. 1049; *Gedge* v. *City of Covington*, 26 Ky. Law Rep. 273, 80 S. W. 1160; 2 Smith's Modern Law of Municipal Corporations, p. 879; 1 Abbott on Municipal Corporations, 336; *Borough of McKeesport* v. *Fidler*, 147 Pa. 532, 23 Atl. 799; Simonton on Municipal Bonds, sec. 135.''

The legislation contained in our Sewer Act was doubtless passed by the legislature in response to the mandate of the Constitution, as contained in the first sentence of section 6, article 9, thereof, reading as follows:

''Incorporated cities, towns, and villages may be vested by law with power to make local improvements by special assessments, or by special taxation of property benefited.''

The power of the city of Globe to make local improvements by special assessments or special taxation of the property benefited is derived from the organic law of the state and the legislative act prescribing a method or plan for the exercise of that power by the municipal authorities. It is conceded that the method or plan had been regularly pursued by the municipal authorities up to the time they were enjoined. We are of the opinion that the injunction was not authorized upon the theory that the resolution of intention and the resolution ordering the work to be done were subject to the general referendum.

One other objection is raised to the proceedings of the appellant city, and is set forth in the complaint in this language:

''That said proposed sewer and septic tank does not approach, adjoin or abut upon plaintiff's premises, and will not do so when completed as provided in said resolutions, and that the same, when completed, will be several blocks removed from plaintiff's property, and by reason thereof is of no use or benefit whatsoever to plaintiff's property, and that said sewer will not adjoin or abut upon any property in the said city of Globe except upon the street upon which the said sewer and its laterals are to be laid as specified in said resolutions, and that, as to all other real estate in said district, said proposed sewer is of no use or benefit whatsoever, because it is noncontiguous and remote from such property.''

The Sewer Act (paragraph 1984, Civil Code) provides that "any owner of property liable to be assessed for work may make written protest against the proposed work, or against the extent of the district to be assessed or both"; that a hearing shall be had on protest by the city council, whose decision shall be final and conclusive thereon. However, should the protest be by more than one-half of the owners in number and area of the property within a district to be assessed for the proposed work, no further proceedings shall be taken for six months. Paragraph 1985, *Id.,* provides that if no protests have been filed or if filed have been overruled by the city council, or when protests against the extent of the proposed district shall have been heard and denied, the city council shall immediately thereupon be deemed to have acquired jurisdiction to order the proposed improvement to be made. No protest was made to either the resolution of intention or the resolution of improvement. It is further provided in subdivision 4, paragraph 1988, *Id.,* that whenever the work and improvement are to be assessed upon a district, that the assessment shall be "upon each of the lots respectively in proportion to the estimated benefits to be received by each of the several lots."

Page & Jones, Taxation by Assessment, volume 1, section 555, says:

"The legislature may delegate to municipal corporations the power to determine what property within such municipal corporation is specially benefited by public improvement. The determination of the city, under statutes of this character, is said to be final and conclusive in the absence of fraud, or fraud or mistake, or unless such action on the part of the city is fraudulent or unreasonable, or unless the absence of benefit makes it manifest that the burden amounts to spoliation and not taxation."

Because of the similarity of facts and the clearness of the statement therein, we quote at some length from the opinion of the court in *Beckett* v. *Portland,* 53 Or. 169, 171, 99 Pac. 659:

"No question is made as to the regularity of the proceedings of the municipality in establishing the sewer and making the assessment therefor. The plaintiffs object to the validity of the assessment against their property, because:

(1) It is so situated it cannot be benefited by the sewer; and (2) that it is nonabutting property, and no laterals have been laid to it. By the charter of the city of Portland, the council is authorized and empowered, whenever it may deem that the public health, interest, or convenience may require, to order to be constructed and laid all sewers and drains, to levy and collect an assessment upon all lots and parcels of land specially benefited by such sewers, to defray the whole or any part of the cost and expense thereof, to determine the boundaries of the district benefited and to be assessed for such purpose, what lands are specially benefited thereby, and the amount to which each lot or parcel of land is benefited, and its action in creating such assessment district is made final and conclusive. Sections 389 and 390. Under such a charter the action of the council in establishing a sewer district, finding that the property situate therein will be specially benefited by the construction of the sewer, and ascertaining and determining the amount of such benefit and making an assessment therefor, is conclusive on the courts in a collateral attack, unless the act of the municipal body is so unreasonable, oppressive and subversive of the rights of the citizens as to indicate an abuse, rather than a legitimate exercise, of the power. Hamilton, Spec. Assess. 440; Gray, Limit. Tax. Power, secs. 418, 1888; 1 Abbott, Munic. Corp., p. 802; 25 Ency. Law, 1226; *Paulson* v. *City of Portland,* 16 Or. 450, 1 L. R. A. 673, 19 Pac. 450; *Masters* v. *City of Portland,* 24 Or. 161, 33 Pac. 540; *People* v. *City of Brooklyn,* 23 Barb. (N. Y.) 166; *Heman* v. *Schulte,* 166 Mo. 409, 66 S. W. 163; *Boyce* v. *Tuhey,* 163 Ind. 202, 70 N. E. 531. . . . The general rule is that, where a municipality has authority to establish assessment districts and assess the cost of constructing sewers on property therein, it is not essential to the validity of an assessment that the property shall abut upon the street or place where the sewer is laid. The question of benefits is one of fact, and, if it be determined by the proper tribunal that the property is specially benefited by the construction of the sewer, an assessment is proper to the extent of such benefit, whether the property is abutting or contiguous to the improvement or not. 1 Gray, Limit. Tax. Power, sec. 1889; 1 Abbott, Munic. Corp., sec. 342; *Title Trust Company* v.

*City of Chicago,* 162 Ill. 505, 44 N. E. 832; *Mason* v. *City of Chicago,* 178 Ill. 499, 53 N. E. 354.''

See, also, *English* v. *Territory,* 11 Ariz. 87, 89 Pac. 501.

But special assessments or special taxation of property benefited can be made only for a ''local improvement.'' Now, is the proposed main-trunk sewer and septic tank a local improvement as that phrase has been defined and understood? The paucity of facts in the agreed statement of the case makes it somewhat difficult for us to determine whether the improvement specially benefits all of the real property of the city of Globe, or is confined to a particular locality thereof, or as to whether it is intended as a measure solely for the protection of the health of the city's inhabitants. The resolution of intention recites:

''That said improvement was of general benefit to the whole city and its people, and was necessary to the construction, establishment and maintenance of a complete sewer system for said city, and was the base unit of such system, which system the mayor and council considered necessary to the health and welfare of the people of said city, and declared that the expense of said main should be assessed on all and every lot, piece or parcel of land in said city, and made the city a district for the assessment of such costs.''

This resolution carries the idea that the proposed improvement is ''of general benefit to the whole city and its people'' and ''necessary to the health and welfare of the people of said city.'' There is an absence of a finding or assertion of special benefits to the real property of the city. The dominant idea suggested by the resolution is that a benefit will accrue to the whole city and its people by improved sanitary conditions, and the idea of special benefit to property is almost, if not entirely, shut out. Page & Jones, Taxation by Assessment, volume 2, section 654, says:

''Assessments cannot be levied for general benefits. Within the meaning of this rule, general benefits are those which the owner receives in common with the community at large. General benefits are enjoyed as a member of the community, and not as the owner of property which is specially benefited.''

The declaration of the city council that the improvement would be one of ''general benefit'' means that the benefit would be common to all the members of the community, and

that all would share it alike. If that finding is true, and we cannot gainsay it, the improvement proposed is not local.

"A 'local improvement' has been defined to be a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality. *City of Chicago* v. *Blair*, 149 Ill. 310, 24 L. R. A. 412, 36 N. E. 829. This definition, which was intended to be explanatory of a 'local improvement,' has not . . . added very much to the words themselves. As was said in *State* v. *Reis*, 38 Minn. 371, 38 N. W. 97, the only essential elements of a local improvement are those which the term itself implies: viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property, generally, in the city." *Waukegan* v. *De Wolf*, 258 Ill. 374, Ann. Cas. 1914B, 538, 45 L. R. A. (N. S.) 918, 101 N. E. 532; *Loeffler* v. *Chicago*, 246 Ill. 43, 20 Ann. Cas. 335, and note, 339, 92 N. E. 586.

The proposed improvement by the city of Globe does not fall within these definitions, and is not the kind of an improvement that can be made by special assessment.

The judgment of the court is affirmed.

FRANKLIN, J., concurs.

CUNNINGHAM, J., Specially Concurring.—I concur in the order affirming the judgment of the lower court, but for very different reasons than those stated in the majority opinion.

The questions presented in the case, in my opinion, arise from the matters of establishing a sewer district and defining its boundaries to conform to the corporate limits of the city of Globe, and the enactment of the resolution of intention to construct the sewer and septic tank upon the determination by the city council that such improvement is necessary, and after the city council has officially declared that the public health, interest and convenience of the city of Globe and its people required such sewer and septic tank, and that the improvement was of more than local or ordinary benefit and was of general benefit to the whole city and its people. The question is whether such matters are matters upon which the city authorities are empowered by general laws to legislate.

These are the matters against which the referendum petitions were interposed. The matter of establishing special assessment districts and the levying of a special assessment upon a certain class of property within such district to pay for the construction of the improvement is a matter incidental to the main question. The power of the city council to cause the improvement to be made, when that power exists, necessarily carries the power to provide for payment of construction, as a necessary consequence to the power to cause to be constructed. If the acts of the city authorities in establishing the sewer district coextensive with the incorporated limits of the city—the determining and declaring that the public health, interest and convenience of the city and its people require the improvement, and that the improvement is more than local, but general in its nature—are matters legislative in their nature, then they are matters upon which the city is empowered by general law to legislate, and subdivision 8, section 1, article 4, of the state Constitution clearly is applicable, reserving the right to the qualified electors to invoke the referendum against them.

It is my opinion such matters are matters upon which the city of Globe is empowered by the general laws to legislate, and that the power of the city authorities to proceed with the legislation was suspended by the filing of the referendum petitions against the resolution of intention, including the matters establishing the sewer district and determining the necessity of the construction of the improvement. The referendum petition filed against the legislation, in effect, questioned the public policy of those matters, and required that issue to be submitted to a vote of the qualified electors for decision. According to the authority cited from (1 Dillon Municipal Corporations, sec. 24), these matters directly affect the first class mentioned, who ought to have an equal voice therein, as Judge Dillon says, because the matters in question directly relate to, and are determined by the city council, and declared by the council such as the public health, interest and convenience of the city of Globe and its people require to be done, and of general benefit to the whole city and its people.

The matter of providing for the payment of the expense of the improvement follows, of course, but is dependent upon the power to make such improvement. When the power to

make the improvement exists, and is ordered, then provision for the payment of the costs is authorized. The city council of Globe assumed the power to make the improvement existed, and could not be suspended by the filing of the referendum petitions, and upon such presumption provided for the paying of the cost of construction by a special assessment laid upon the real estate of the city of Globe. Such action affected the second class of the inhabitants of the city mentioned by Judge Dillon, to which class the powers of the referendum reserved in the constitutional provision do not apply, and properly, because the real estate may not be owned by all the qualified electors. The General Sewer Improvement Act recognizes this distinction, and provides that the owners of property liable to be assessed for the work may make written protest against the proposed work or against the extent of the district assessed or both. These protests must be made within a specified time after notice given of the intention of the city authorities to make the improvement, and they must be filed with the city clerk. The council must then proceed to hear and pass upon the protests, and its decision thereon is made final and conclusive. When the protest is against the proposed work and the cost thereof to be assessed upon the property within a district, and the council shall find that such protest is made by more than one-half of the owners in number and in and of the property within a district to be assessed for the proposed work, then no further proceedings shall be taken for a period of six months. Paragraph 1984, Civ. Code 1913.

The statute clearly recognizes the owners of the property to be assessed as a separate class from the qualified electors of the city, but a right to protest does not depend upon qualifications of electors. The statute does not require the protestant to be inhabitant of the city. The only qualification prescribed is that he be the owner of the property within the district assessed to pay the cost of the work. The Constitution reserves the right of the referendum to the qualified electors of the city, but not to the owners of a class of property about to be assessed to pay for local improvements.

I am of the opinion that the judgment should be affirmed upon the grounds that the powers of the city council to proceed with the ordering of the work proposed were suspended

by the timely filing of the referendum petitions by a sufficient number of the qualified electors against the matters above stated, and the further proceedings of the city council in the matters were without authority of law.

For these reasons, I concur in the order affirming the judgment.

---

NOTE.—On the question of assessment for drains and sewers, see note in 60 L. R. A. 227. And as to persons and property liable for assessments for drains and sewers, see note in 58 L. R. A. 353. And for property liable for assessment for construction of drains and sewers, see note in 26 L. R. A. (N. S.) 973.