[Civil No. 3106.   Filed February 8, 1932.]

[7 Pac. (2d) 622.]

H. L. MOSHER, Appellant, v. THE CITY OF PHOENIX, a Municipal Corporation, Appellee.

Mr. John W. Ray, for Appellant.

Mr. Charles A. Carson, Jr., City Attorney, and Mr. James E. Nelson, Assistant City Attorney, for Appellee.

LOCKWOOD, J.—On August 22, 1928, the city of Phoenix, a municipal corporation, hereinafter called appellee, adopted an ordinance declaring its intention to order the widening of Van Buren Street from Sixteenth Street to Central Avenue, describing the improvement and the land necessary and convenient to be taken therefor, stating that the improvement was "of more than local or ordinary public benefit" and that the expense should therefore be chargeable upon a district, and specifying the boundaries of the district to be benefited by said improvement and to be assessed to pay therefor in proportion to the benefits to be derived. It was expressly provided that such improvement should be made under the provisions of chapter 20, Session Laws of 1915, and chapter 107, Session Laws of 1927, and the amendments thereto.

In order to widen the street, it was necessary that certain real estate described in such ordinance be condemned by appellee. Suit was therefore filed in the superior court of Maricopa county in which appellee was named as plaintiff and several hundred persons and corporations as defendants. Among these defendants were H. L. Mosher, a resident of Phoenix, hereinafter called appellant, and James Dean Collins, a citizen of the state of Oregon. The complaint prayed that defendants be required to set forth the nature and extent of their several estates in the lands sought to be condemned, that such interest and the value of each and every separate estate in said lands and the damages accruing to the respective owners of such estates by reason of the condemnation proceedings be adjudged and determined, and that, upon payment of the damages so ascertained to the said defendants or into court for their benefit, the court make and enter a final judgment condemning the lands so described for the public improvement set forth in the ordinance.

Appellant answered, setting up that the acts of the legislature above referred to were unconstitutional, and that the proposed improvement was unnecessary, and demanded a jury trial upon the extent of the damage to her property. This was granted. Some time apparently thereafter James Dean Collins presented his petition for removal of the action to the United States District Court for the district of Arizona, under title 28, section 71, U. S. C. A. An order was made certifying the case to the District Court in pursuance of the petition so far as the same applied to the defendant James Dean Collins only, and the court proceeded to a hearing as against appellant. The jury returned a verdict finding the damages accruing to appellant's property by reason of the proposed widening of the street was $10,000, and judgment was rendered on the verdict. After the usual motion for a new trial was overruled, appellant brought the matter before us for review.

The first question which we consider is the contention of appellant that the petition and order of removal to the federal District Court above referred to had the effect of removing the entire case to such court, and that the state court was powerless to proceed further with it as against any of the defendants. It does not appear from the abstract of record whether this point was suggested to the trial court in advance of the trial, but we consider the matter as though the objection was made seasonably. Removal of suits from state courts to the federal court is governed primarily by title 28, section 71, U. S. C. A., *supra,* and the question of whether such removal takes with it the entire case, so that the state court loses jurisdiction to proceed as against other defendants than those petitioning for removal, has been before the federal courts several times. Appellant urges that this matter has been definitely con-

cluded by the Supreme Court of the United States in the case of *Barney* v. *Latham,* 103 U. S. 205, 26 L. Ed. 514, wherein the court says:

"Rather than split up such a suit between courts of different jurisdictions, Congress determined that the removal of the separable controversy to which the judicial power of the United States was, by the Constitution, expressly extended, should operate to transfer the whole suit to the Federal court."

Were there nothing further, it would seem that this would determine the issue in favor of appellant. The court, however, continues further, as follows:

"It may be suggested that if the complaint has united causes of action, which, under the settled rules of pleading, need not, or should not, have been united in one suit, the removal ought not to carry into the Federal court any controversy except that which is wholly between citizens of different States, leaving for the determination of the State court the controversy between the plaintiffs and the land company. We have endeavored to show that the land company was not an indispensable party to the controversy between the plaintiffs and the defendants, citizens of New York, Wisconsin, and Massachusetts. Whether those defendants and the land company were not *proper* parties to the suit we do not now decide. We are not advised that any such question was passed upon in the court below. It was not discussed here, and we are not disposed to conclude its determination by the court of original jurisdiction, when it is therein presented in proper form. A defendant may be a proper, but not an indispensable party to the relief asked. In a variety of cases it is in the discretion of the plaintiff as to whom he will join as defendants. Consistently with established rules of pleading he may be governed often by considerations of mere convenience; and it may be that there was, or is, such a connection between the various transactions set out in the complaint as to make all of the defendants proper parties to the suit, and to every controversy embraced by it; at least, in such a sense as to pro-

tect the complaint against a demurrer upon the ground of multifariousness or misjoinder."

From this counsel for appellee argue that it might reasonably be inferred it was only in cases where all the defendants were, under the ordinary rules of pleading, if not indispensable, at least proper, parties to the action, that the whole case was removed.

In the later case of *Union Pacific Ry. Co.* v. *City of Kansas,* 115 U. S. 1, 29 L. Ed. 319, 5 Sup. Ct. 1113, the city had brought condemnation proceedings against the railway company and many other persons jointly for the purpose of widening a street, and it was urged that on a valid petition for removal by the railway company alone, if the whole case must be removed, it would cast upon the federal court an administrative function in local matters for which it lacked jurisdiction. The court said:

"Now this controversy . . . is a distinct controversy between the company and the city. It may be settled in the same trial with the other appeals, and by a single jury; but the controversy is a distinct and separate one, and is capable of being tried distinctly and separately from the others. If the state circuit court had equity powers, it might direct a separate issue for the trial of this controversy by itself. It might try the other appeals without a jury (the parties waiving a jury), and try this controversy by a jury.

"If this view of the subject is correct, we see no difficulty in removing the controversy between the city of Kansas and the railway company for trial in the circuit court of the United States. . . . The indirect effect upon the general proceedings for widening the street which would ensue in case the federal court should determine that the city of Kansas had no right to widen the street in the company's depot grounds, or that the valuation of its property was much too small, or the assessment for benefits against it was much too large, furnishes no good reason for depriving the company of its right to remove its suit into a United States court."

And the suit was removed so far as the railway company only was concerned. Apparently the court of last resort has not further clarified the issue, but since these two decisions the lower federal courts have several times considered the matter.

The case of *City of Chicago* v. *Hutchinson,* 15 Fed. 129, decided by the Circuit Court of the Northern District of Illinois some time after the two decisions above cited, was one for the condemnation of land for the opening of a street, and it was held that a petition for removal on the part of one defendant did not carry with it the whole suit, but left all of the other parties subject to the usual process of the state court. In the case of *In re Stutsman County, N. D.,* (C. C.) 88 Fed. 337, suit was brought for the collection of delinquent taxes, and as provided by the statute, all of the delinquent taxpayers were included in the one proceeding of the county. It was held that although in form it was one action, as a matter of fact the different parties defendant did not have a "separable controversy," but rather a "separate suit," and the court said:

"It is urged, in support of the motion to remand, that, if this court takes jurisdiction of the matter removed, it will necessarily bring into this court the entire proceeding which was presented to the state court. That, however, is not the case. As already stated, the proceeding which has been removed is, to all intents and purposes, a separate suit, and as to all parcels of land mentioned in the list filed in the office of the clerk of the district court of Stutsman county, except those mentioned in the receivers' petition, the proceeding remains before the state court, wholly unaffected by the removal."

Again, in *Deepwater Ry. Co.* v. *Western Pocahontas Coal & Lumber Co. et al.,* (C. C.) 152 Fed. 824, where the plaintiff endeavored to condemn various parcels of land belonging to different

defendants, the same question was raised as to whether all of the proceedings were removed to the federal court when but one of the defendants was entitled to remove on the ground of diverse citizenship. The court carefully distinguished between "separable controversies," and "wholly distinct controversies," which were only joined in one proceeding by express statutory permission, and pointed out the difference between the rules laid down in *Barney* v. *Latham, supra,* and *Union Pacific Ry. Co.* v. *City of Kansas, supra.*

In all the cases cited by appellant, the cause of removal was a "separable controversy" and not a "wholly distinct cause of action." In view of the language of the two leading cases in the Supreme Court of the United States, and the fact that so many years have elapsed since the District and Circuit Court decisions above cited without the rule there stated being disapproved by the appellate court, we think it but reasonable to conclude the law is that, in cases which under the ordinary system of pleading would be entirely separate actions against separate defendants, but by express local statute for the purpose of convenience the suits may be consolidated in effect and brought as one, and in which it is necessary to render distinct and separate judgments therein as against each of the different defendants, the removal by one party into the federal court does not divest the state courts of jurisdiction to proceed to determine the issues as between the plaintiff and other parties not entitled to removal.

The second question presented is as to the constitutionality of the statutes upon which the ordinance is based. So far as chapter 20, Session Laws of 1915, is concerned, it is apparently urged that, where it is sought to condemn private property for the purpose of widening a public street, the cost of such condemnation must be paid by general taxation

instead of by local assessment. The only cases which have been called to our attention by counsel for appellant which it is claimed uphold this contention are those of *Norwood* v. *Baker,* 172 U. S. 269, 43 L. Ed. 443, 19 Sup. Ct. Rep. 187, and *City of Globe* v. *Willis,* 16 Ariz. 378, 146 Pac. 544.

The case of *Norwood* v. *Baker, supra,* was so limited in its effect by *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 45 L. Ed. 879, 21 Sup. Ct. Rep. 625, that the earlier case applies only to a very few and unusual situations. The case last cited lays down the general rule as follows:

" 'The major part of the cost of a local work is sometimes collected by a general tax, while a smaller portion is levied upon the estates specially benefited.

" 'The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits.

" 'The whole cost in other cases is levied on lands in the immediate vicinity of the work.

" 'In a constitutional point of view either of these methods is admissible, and one may be sometimes just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule.' Cooley, Taxn. 447.

" 'The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. . . . Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specifically benefited, and, if in the latter mode, whether

the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency.' 2 Dill Mun. Corp., § 752, 4th Ed. . . .

"That was a case [referring to *Norwood* v. *Baker, supra*] where, by a village ordinance apparently aimed at a single person a portion of whose property was condemned for a street, the entire cost of opening the street, including not only the full amount paid for the strip condemned, but the cost and expenses of the condemnation proceedings, was thrown upon the abutting property of the person whose land was condemned. This appeared, both to the court below and to a majority of the judges of this court, to be an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power. This court, however, did not affirm the decree of the trial court awarding a perpetual injunction against the making and collection of any special assessments upon Mrs. Baker's property, but said:

" 'It should be observed that the decree did not relieve the abutting property from liability for such amount as could be properly assessed against it. Its legal effect, as we now adjudge, was only to prevent the enforcement of the particular assessment in question. It left the village, in its discretion, to take such steps as were within its power to take, either under existing statutes or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property for so much of the expense of opening of the street as was found upon due and proper inquiry to be equal to the special benefits accruing to the property. By the decree rendered the court avoided the performance of functions appertaining to an assessing tribunal or body, and left the subject under the control of the local authorities designated by the state.' "

We see nothing in the provisions of chapter 20, *supra,* violative of the federal Constitution.

But, it is said, the resolution of intention herein declares the improvement to be of "more than local or ordinary public benefit," and therefore, under the authority of *Globe* v. *Willis, supra,* the cost thereof cannot be assessed as a special improvement, but must be paid by general taxation. In the case of *Globe* v. *Willis* we held that a main trunk line sewer and septic tank, the cost of which it was sought to assess against certain adjoining property, as a matter of fact was of general benefit to the whole city and its people, and not of special benefit to any particular property. The resolution of intention in the present case, however, falls far short of that in the Globe case. While it does declare that the improvement is of "more than local or ordinary public benefit," it does not state, as it did in the Globe case, that it was of general benefit to the whole city and its people.

There are three classes of municipal improvements: First, one of practically equal benefit to the entire city. The cost of this cannot, of course, be charged against specific local property, but must cover the city as a whole. In the second class, the benefit is presumably only to the immediately abutting property, and in such case the cost may properly be assessed to that property only. A third and intermediate class, however, frequently arises where the improvement is of less than city-wide but greater than strictly local benefit. In such case the law very properly provides that a district may be established and the property in such district be assessed in proportion to the benefit derived therefrom, even though some of it does not abut on the proposed improvement. We think the improvement in question herein falls in the third class, and that appellee very properly declared it to be of more than local or ordinary public benefit as a preliminary to the formation of a district to which the cost should be charged, and that chapter

20, *supra,* which authorizes this procedure, is in no respect unconstitutional on that account.

The objection urged against chapter 107, Session Laws of 1927, is that it is in violation of section 14, part 2, article 4, of the Constitution of Arizona, which reads as follows:

"No act or section thereof shall be revised or amended by mere reference to the title of such Act, but the Act or section as amended shall be set forth and published at full length."

Chapter 107 nowhere attempts to revise or amend any act by reference. It is on its face an entirely independent and distinct act. If incidentally as being a later act it repeals a part of an earlier act in conflict therewith, such repeal is not affected by section 14, *supra.*

The contention that the law provides for a special assessment without its being submitted to a vote of the property taxpayers has already been passed on by us in *Globe* v. *Willis, supra,* and *Ainsworth* v. *Arizona Asphalt Paving Co.,* 18 Ariz. 242, 158 Pac. 428.

We think there is no merit in the contention that the proceeding is not within the authority of the charter of appellee. We need only refer to subsection 46, section 2, of chapter 4 of the same:

"To order the opening, extending, widening, straightening, or closing of any street, avenue, lane, alley, court or public place within the city, and to condemn any and all property necessary or convenient for that purpose and to assess the cost or such part of the cost thereof as may be proper to the lots or parts of lots of land benefited thereby, and provide for the collection of the same. The proceedings for condemnation shall be prescribed by, and conducted pursuant to the directions and authority of the Commission; the proceedings for the doing of anything authorized by this sub-division shall be that prescribed by the Commission, not inconsistent

with the constitution and general laws of the State of Arizona.''

We think it unnecessary to refer to any of the other alleged unconstitutional objections, although we have considered them.

The next objection raised by appellant goes to the exclusion of three classes of evidence by the trial court. The first was evidence upon the question of whether or not the amount of land proposed to be taken was necessary for the widening of the street. The court, in our opinion, properly held that this was concluded by the legislative body of the city declaring the necessity. *San Mateo County* v. *Coburn,* 130 Cal. 631, 63 Pac. 78, 621; *City of Seattle* v. *Byers,* 54 Wash. 518, 103 Pac. 791. The second class was evidence as to the loss of rent from possible tenants during the pendency of this proceeding. Counsel for appellant has cited no case to us allowing for loss of possible rent during such period, in the absence of statutory provision therefor, and the general rule is to the contrary. *Brackett* v. *Commonwealth,* 223 Mass. 119, Ann. Cas. 1918B 863, and notes, 111 N. E. 1036. The third class was in regard to the cost of a sidewalk on the land taken, which had previously been built by appellant. Our Constitution provides that property shall not be ''taken or damaged'' without just compensation therefor. Article 2, section 17. Under provisions like this, it is generally held that a change in the established grade of a street, which injuriously affects the value of adjoining property, is ''damage.'' 20 C. J., p. 694, and notes. The damage is to the easement of ingress and egress. *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, 42 Am. St. Rep. 149, 37 Pac. 750; *Rigney* v. *City of Chicago,* 102 Ill. 64. And the measure of damage is the difference between the value of the abutting property before and after the change of grade. *Eachus* v. *Los Angeles etc. Ry. Co., supra; Egbers* v. *Seattle,* 90 Wash. 172,

155 Pac. 751; *City of Rawlins* v. *Jungquist*, 16 Wyo. 403, 94 Pac. 464, 96 Pac. 144.

We are of the opinion that by analogy, if through the destruction of a sidewalk or pavement on a street already established the easement of ingress or egress is injured, damages may be recovered therefor, and the measure· thereof is the same as in a change of grade. In this case, however, the proof offered was only as to the cost of the old sidewalk. This is not the proper method of proving such damages, and the court did not err in rejecting it.

The next assignment of error is that the court erred in the admission of certain testimony as to the value of the property taken. The only point worth referring to is as to the cost of tearing down the present external wall of the brick building on the ground and rebuilding a new one with the same old material. The usual rule is that the measure of damages to a building is the cost of restoring it to the same condition in which it was just before damage was sustained. We think the court did not err in admitting evidence on this point. 5 McQuillin, Mun. Corp., 2d., p. 524.

The last assignment necessary to consider is that the judgment leaves it optional with the city to take and pay for the property or allow the owner to redeem the same. This is in strict accordance with the statute, and we can see no objection thereto. If the city does not take the property, certainly appellant has not been damaged. If it does take it, she will receive the amount which it has been legally determined she is entitled to. The mere fact that the uncertainty as to the action of the city may prevent her getting a tenant is only the incidental damage which everyone must bear by reason of the fact that litigation is pending concerning property in ·which he is interested.

In view of the method in which the assignments of error were set forth and argued, it has been difficult for us to follow the theory of the appellant in this case, but we have endeavored to cover every material point argued. If there are any which we have not mentioned, it has been because we considered them immaterial. The judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.