FRANK LOEFFLER, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed June 29, 1910—Rehearing denied October 13, 1910.*

1. INJUNCTION—*when tax-payer may maintain bill for injunction.* Even though the complainant in a bill for injunction may not be entitled to enjoin the collection of the special assessment on his property because the grounds alleged in the bill might have been urged as a defense to the confirmation of the assessment, yet if the proceedings are void and require the illegal expenditure of the public money of the municipality, of which he is a tax-payer, he may maintain a bill to enjoin the letting of the contract.

2. SPECIAL ASSESSMENTS—*section 97a of the Local Improvement act contemplates one improvement in two municipalities.* Section 97a of the Local Improvement act (Hurd's Stat. 1909, p. 480,) was added to said act to permit one continuous improvement to be constructed jointly by two or more municipalities.

3. SAME—*what are not two separate and distinct improvements.* A sewer extending from a point in a city to the city limits and from the city limits through the territory of an incorporated town to the outlet, and designed for use by both municipalities, is one continuous improvement and not a separate improvement as to each municipality.

4. SAME—*term "local improvements" defined.* The term "local improvements," as used in section 9 of article 9 of the constitution, means such improvements as are paid for by special assessment or special taxation, and which, by reason of the locality of the particular improvement, are of greater benefit to property in the vicinity of the improvement, by enhancing its value, than to the municipality at large.

5. SAME—*whether improvement is local is a question of fact.* Whether an improvement is local is a question of fact and not of law; but the municipal authorities cannot arbitrarily determine that an improvement shall be regarded as local which, in fact, is general, and that question is subject to review by the courts.

6. SAME—*local improvement must be wholly within one municipality.* An improvement must be wholly within the limits and under the control of one municipality in order to be a "local improvement," as that term is used in the constitution. (*Hundley* v. *Lincoln Park Comrs.* 67 Ill. 559, followed.)

7. CONSTITUTIONAL LAW—*section 97a of Local Improvement act is unconstitutional.* Section 97a of the Local Improvement act, (Hurd's Stat. 1909, p. 480,) authorizing a single improvement to be constructed jointly by two or more municipalities, is void.

HAND, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

TOLMAN, REDFIELD & SEXTON, for appellant:

An injunction will be granted to restrain the letting and performance of an illegal contract with a municipal corporation, and the expenditure of public funds thereunder, at the instance of a citizen who will be assessed or taxed therefor. *Lindblad* v. *Board of Education,* 221 Ill. 261; *Burke* v. *Snively,* 208 id. 328; *Holden* v. *Alton,* 179 id. 318; *Adams* v. *Brenan,* 177 id. 194; *Stevens* v. *Training School,* 144 id. 336; *Wright* v. *Bishop,* 88 id. 302.

This rule is applicable to a local improvement payable by special assessment, notwithstanding the confirmation of said assessment, where the ordinance providing for said improvement is null and void and the court which confirmed said assessment had no jurisdiction to enter said order of confirmation. *Steenberg* v. *People,* 164 Ill. 478; *Sumner* v. *Milford,* 214 id. 388; *Boals* v. *Bachmann,* 201 id. 340; *People* v. *Phinney,* 231 id. 180.

The ordinance is void and the judgment of confirmation of the assessment entered by the county court was void, and said court had no jurisdiction to enter the same.

*Leather Co.* v. *Chicago,* 203 Ill. 451; *Culver* v. *People,* 202 id. 34; *Cass* v. *People,* 166 id. 126; *People* v. *Hurford,* 167 id. 226.

The act of the General Assembly amending the act concerning local improvements by adding a new section, known as section 97a, and the ordinances of the town of Cicero and city of Chicago herein involved, are unconstitutional and void. Said act is within the constitutional prohibition against the passage of special laws changing or amending the charter of any city, town or village. Const. art. 4, sec. 22; Hurd's Stat. 1908, secs. 7, 8, p. 423; *Hayward* v. *Sencenbaugh,* 235 Ill. 580; *L'Hote* v. *Milford,* 212 id. 418.

An improvement situated within two or more municipalities and to be paid for by assessments levied upon property in both municipalities, is not, within the meaning of the constitution, a "local improvement," which cities, towns or villages may be authorized by the legislature to make by special assessment. Const. art. 9, sec. 9; *Hundley* v. *Park Comrs.* 67 Ill. 558; *Chicago* v. *Law,* 144 id. 569.

The construction of a sewer situated partly in the town of Cicero and partly in the city of Chicago, and designed to be used by both municipalities, is not a corporate purpose of either municipality for which either can constitutionally assess and collect taxes. *Hundley* v. *Park Comrs.* 67 Ill. 558.

GEORGE A. MASON, and WILLIAM T. HAPEMAN, (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellees:

The ordinance of the town of Cicero, whether void or voidable, did not affect the jurisdiction of the county court. Such jurisdiction was obtained by the filing of the petition and the giving of the notices required by law. *Leitch* v. *People,* 183 Ill. 569; *Pipher* v. *People,* 183 id. 436; *Conlin* v. *People,* 190 id. 400; *People* v. *Harper,* 244 id. 121;

*People* v. *Talmadge,* 194 id. 67; *Chicago* v. *Galt,* 225 id. 368; *East St. Louis* v. *Davis,* 233 id. 553; *Bellwood* v. *Steel Co.* 238 id. 52; *Chicago* v. *Clark,* 233 id. 404.

A collateral attack upon the judgment of confirmation must fail unless the court was without jurisdiction, and such want of jurisdiction must be apparent upon the face of the record and may not be made to appear by evidence *dehors* the record. *Berry* v. *Raymond,* 202 Ill. 231; *Perry* v. *People,* 206 id. 334; *People* v. *Weimers,* 225 id. 17; *People* v. *Owen,* 231 id. 311; *Harman* v. *People,* 214 id. 454; *Wagg* v. *People,* 218 id. 337; *Phillips* v. *People,* id. 450; *Gage* v. *People,* 207 id. 61; *Ryan* v. *People,* id. 74; *Gage* v. *People,* id. 377; *People* v. *Railroad Co.* 213 id. 367; *Goldstein* v. *Milford,* 214 id. 528; *Sumner* v. *Milford,* id. 388; *Noonan* v. *People,* 221 id. 567; *Carr* v. *People,* 224 id. 160; *People* v. *Bank,* id. 191; *Cline* v. *People,* id. 360.

The complainant can avail himself of no objection by bill in equity which he could not urge upon the application for judgment and order of sale. *Lyman* v. *Chicago,* 211 Ill. 209; *Sumner* v. *Milford,* 214 id. 388; *Board of Education* v. *People,* 219 id. 83; *Gage* v. *Chicago,* 223 id. 602; *Chicago* v. *Galt,* 225 id. 368; *Gage* v. *Chicago,* id. 218; *People* v. *Railroad Co.* 213 id. 367.

Section 97*a* is not special legislation and does not violate the constitutional inhibition against amending the charter of a city or village except by a general law. If the section does amend such charters it operates as a general law and not as special legislation. *Gage* v. *Chicago,* 203 Ill. 26.

The proposed improvements are local, within the meaning of the constitution. The test of a local improvement is not its locality or intended use, but whether it will specially enhance the value of property in its locality. The order of consolidation did not change the character of the improvements. *Northwestern University* v. *Wilmette,* 230 Ill. 80; *Ewart* v. *Western Springs,* 180 id. 318; *Fisher* v.

*Chicago,* 213 id. 268; *Shreve* v. *Cicero,* 129 id. 226; *Maywood Co.* v. *Maywood,* 140 id. 216.

Per CURIAM: This is an appeal from a decree of the circuit court of Cook county sustaining the demurrer of appellees and dismissing for want of equity the bill of complaint of appellant to enjoin the city of Chicago and its officials from entering into a contract with the Federal Improvement Company for the construction of a certain sewer in the city of Chicago and town of Cicero.

The bill alleges that proceedings had been taken under the provisions of section 97*a* of the Local Improvement act, (Hurd's Stat. 1909, p. 480,) to construct the sewer in question. That section provides, in part, as follows: That any city, village, incorporated town or other corporate authorities to which the provisions of the Local Improvement act shall apply, may join with any other city, village or other corporate authorities to which such provisions shall apply, within the same county, in the making of any local improvement or improvements thereunder, and all the terms and provisions of the Local Improvement act shall apply, except so far as the same are modified by said section; that the resolution of the board of local improvements of each municipality shall only describe so much of said improvement as lies wholly within the municipality for which said board acts; that when the proceedings come into court, if it is found a substantial variance exists between the ordinances of the various municipalities, no further proceedings shall be had until the ordinances have been amended; that when the court is satisfied that the ordinances are alike in substance, it shall enter an order consolidating the petitions and designate therein one of the municipalities to conduct the proceedings thereafter; that the proportion of the cost of the said improvement, if any, which shall be of benefit to the public, shall be assessed between the petitioning municipalities in such amounts as

shall appear just and equitable; that neither of the munici-
palities can dismiss the petition without an agreement from
both; that the board of local improvements of the munici-
pality so designated by the court shall have charge of let-
ting the contract and the superintendence and acceptance
of the work and the issuing of bonds and vouchers there-
for, but that each of the municipalities shall have charge
and control of the collection of the assessments levied upon
the land lying within its jurisdiction.

The bill alleges that the proposed sewer is to be con-
structed of concrete in South Fifty-second avenue from a
point thirty-five feet north of the center line of West Madi-
son street, in the city of Chicago, to the center line of
Twelfth street, within said city; that Twelfth street at this
intersection with South Fifty-second avenue is the dividing
line between the city of Chicago and the town of Cicero;
that the sewer, also of concrete, is to be continued in South
Fifty-second avenue from the center line of said Twelfth
street to the south line of section 33, township 39, north,
range 13, east of third principal meridian, in the town of
Cicero,—that is, about as far south as Thirty-ninth street.

After proceedings had been taken by the boards of lo-
cal improvements of both municipalities and petitions had
been filed in the county court of Cook county, an order was
entered in that court consolidating said petitions and desig-
nating the city of Chicago to conduct all the proceedings in
the consolidated case. Thereupon the proper officials of
the city of Chicago filed an assessment roll for the said
improvement of $304,950.75. Of this amount $68,573.55
was assessed against the city of Chicago as public bene-
fits and $128,377.20 was assessed against the lands in the
city of Chicago as specially benefited, while the balance of
$108,000 was assessed against the lands in the town of
Cicero as specially benefited. No public benefits were as-
sessed against the town of Cicero. Numerous objections
were filed to said assessment roll, and after hearing and

certain reductions amounting to about $30,000, the roll was confirmed as modified. Thereupon the city of Chicago advertised for bids for said improvement as a whole, and the Federal Improvement Company, being the lowest responsible bidder, was awarded the contract. Appellant thereupon filed the bill here in question, alleging that he owned property situated in the town of Cicero which was assessed $400 for the improvement, and that he was also a taxpayer in the city of Chicago.

Counsel for appellees insist that appellant was not entitled to file this bill in equity to restrain the collection of a special assessment against his property in the town of Cicero because all of the questions he has raised in the bill could have been urged in the application for judgment and order of sale. Without passing on that question, it is sufficient to say that if the proceedings in the county court were unauthorized and void for the reasons set up in the bill, the letting of the contract to the Federal Improvement Company to do this work would be unlawful and an injury to appellant as a tax-payer in the city of Chicago, the proceedings here showing that a part of the cost of the improvement charged to the city of Chicago as benefits would have to be paid out of the general taxes of said city. If the allegations of the bill are true, the appellant, as a tax-payer, is entitled to file it to enjoin the payment of public money for purposes not warranted by law. *Lindblad* v. *Board of Education,* 221 Ill. 261; *Burke* v. *Snively,* 208 id. 328; *Holden* v. *City of Alton,* 179 id. 318.

Counsel for appellant contend that said section 97*a,* under which the proceedings for this improvement were instituted, is unconstitutional and void because it purports to confer authority upon cities, towns and other corporate authorities to levy special assessments for other than local improvements and to assess and collect taxes for other than corporate purposes. Section 9 of article 9 of the constitution of 1870 provides, in part, that "the General Assembly

246—4

may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise." (Hurd's Stat. 1909, p. 69.) Appellant argues that the improvement here is not a local improvement; that such an improvement, within the meaning of this constitutional provision, must be entirely within one municipality. In answer, appellees contend that the improvement here in question is two separate improvements,— one a sewer in the city of Chicago from Madison street to Twelfth street, and the other a sewer in the town of Cicero from Twelfth street south to the end of the proposed improvement; that each is a separate and distinct sewer and therefore each a local improvement; that the order of consolidation by the county court could not change the character of the two sewers and make them one sewer and a single improvement. If these sewers were separate and distinct improvements there would have been no necessity for invoking in the county court the provisions of said section 97*a,* for each proceeding could have been carried on separately under the provisions of the Local Improvement act. All the provisions of said section 97*a* show that it was added to said Local Improvement act for the purpose of permitting one and the same improvement to be constructed jointly by two or more municipalities. The second paragraph of said section provides that the board of local improvements, or other corporate authorities, shall in their proceedings recite the advisability of making "the proposed improvement within the city or cities, village or villages," etc. Later, the same paragraph states that only so much of "said proposed improvement as lies within each of said municipalities," etc. Again, it speaks of the property "fronting that portion of said improvement which lies within any one of said petitioning municipalities," etc. These and similar expressions throughout the section clearly indicate that the statute contemplates the construction by

two or more municipalities in conjunction, not of two connected improvements, but of one improvement lying in two or more municipalities. Moreover, it is clear from the report of the proceedings in the county court that this was to be one improvement, partly in Chicago and partly in Cicero. The estimated cost of that part within the city of Chicago was only $56,229 and the estimated cost of that part in Cicero was $248,721.75, while there was assessed as public benefits against the city of Chicago $68,573.55 and against the property adjacent to the proposed sewer in the city of Chicago $128,377.20, making the total to be paid by the citizens of and in behalf of the property within the city of Chicago substantially $200,000, or two-thirds of the cost of the entire sewer, while the estimated cost of that part of the sewer in the city of Chicago was less than one-fifth of the entire cost. Even though it be true, as contended by counsel for appellees, that a large part of the cost assessed against the tax-payers of the city of Chicago was to pay for the construction of an outlet outside of the city of Chicago for that part of the sewer in the city of Chicago, that fact would greatly strengthen the argument that the entire sewer was intended to be one improvement. We are compelled to reach the conclusion that under the provisions of section 97a, as well as on the facts shown in this record, this must be held to be one continuous improvement and not two separate and distinct improvements.

What is a local improvement? That term was first mentioned in the constitution of 1870. (Mason & Fuller on Special Assessments, sec. 32.) The term "local improvements," as used in said section 9 of article 9 of the constitution, means such improvements as are paid for by special assessment or special taxation. (*Wilson* v. *Board of Trustees,* 133 Ill. 443.) In a certain sense all improvements within a municipality are local,—that is, they do not extend to all parts of the State. They have, however, locality,—that is, they are nearer to some persons and prop-

erty than others. Under the constitution of 1848, as well as under the present constitution, it has been held that a special assessment means "an assessment to pay for an improvement for public purposes upon real property which is, by reason of the locality of the improvement, specially benefited, beyond the benefits by the improvement to real property, generally, throughout the municipality, proportioned by such benefits." (*Wilson* v. *Board of Trustees, supra,* p. 469.) A local improvement is a public improvement "which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality." (*Northwestern University* v. *Village of Wilmette,* 230 Ill. 80; *City of Chicago* v. *Blair,* 149 id. 310; *Illinois Central Railroad Co.* v. *City of Decatur,* 154 id. 173.) The test as to whether such an improvement is local is whether it specially benefits the property assessed. (*Ewart* v. *Village of Western Springs,* 180 Ill. 318.) An improvement may be local, though of some general benefit to the public, when the substantial benefits to be derived from it are local in their nature and the portion of the city where the improvement is made will be specially and peculiarly benefited in the enhancement of the value of the property. (*Fisher* v. *City of Chicago,* 213 Ill. 268; *City of Chicago* v. *Law,* 144 id. 569; *Enos* v. *City of Springfield,* 113 id. 65; 25 Am. & Eng. Ency. of Law,—2d ed.—1176, and cases cited; 25 Cyc. 1533, and cases cited.) When it is proposed by a municipal corporation to make an improvement, the question whether it is local in its character, so that it can be made by special assessment, is one of fact and not of law. The corporate authorities, however, cannot arbitrarily determine that the improvement shall be treated as local when it is, in fact, general in its character. Their decision on this question is subject to review by the courts. *Hewes* v. *Glos,* 170 Ill. 436.

This court, in *Hundley* v. *Lincoln Park Comrs.* 67 Ill. 559, had this provision of the constitution under consideration as applying to a special assessment for improving a park in the city of Chicago, and said (p. 566): "From the evidence in the record it appears this park is to be constructed within the corporate limits of two towns. The property in both the towns is assessed to defray the costs and expenses of acquiring the land and improving the park, and assessments are to be paid by the property owners of those towns, not to pay for lands lying inside and improvements which are to be made within those towns, but for lands situate outside and for improvements which are to be made outside of the corporate limits of such towns. Thus, taxes paid on property in North Chicago would be expended for lands and improvements, some of them in North Chicago and some in Lake View, and taxes paid on property situated in Lake View would be expended in North Chicago. How, then, can it be contended that the creation of a park in Lake View by taxes in part paid by North Chicago would be a local improvement of North Chicago, or, *vice versa,* in Lake View? We must hold, therefore, that an assessment on property in North Chicago for a local improvement in Lake View, or *vice versa,* is not within the meaning we are disposed to give this clause of the constitution." The reasoning in this case seems to be conclusive on the question here under discussion.

Counsel for appellees, however, attempt to distinguish this case from the *Hundley case,* first, because the sewer here, they contend, is two separate improvements,—one within the separate limits of each municipality. As already seen, we cannot agree with this contention. Second, they contend that it does not appear from the case just cited that the lands outside of the corporate limits of one town were necessary for the use of parks situated in the other town, and that it is shown here that in order for the sewer in the city of Chicago to be of any benefit to the property

within said city, an outlet in the town of Cicero for such sewer was required. Counsel cite *Shreve* v. *Town of Cicero,* 129 Ill. 226, *Cochran* v. *Village of Park Ridge,* 138 id. 295, and *Maywood Co.* v. *Village of Maywood,* 140 id. 216, as holding that while it is the general doctrine that a municipal corporation can only exercise its powers within its corporate limits, still that this doctrine is subject to the qualification that such authorities may do those things which are necessarily and fairly implied or incident to the powers expressly granted to them; that, therefore, a municipality must have the power to obtain an outlet for a sewer outside of its corporate limits if no such outlet can be found within such limits. A reading of these decisions shows that they were based upon the theory that the outlet of the sewer was really a part of the improvement and was for the exclusive use of the municipality in question. Such, however, is not the case here. True, that part of the sewer in the town of Cicero is to furnish an outlet for that part of the sewer in the city of Chicago, but it is also for the use and benefit of lands in Cicero adjacent to it. These cases are not in conflict with and do not overrule the general doctrine on this question laid down in *Hundley* v. *Lincoln Park Comrs. supra.*

Counsel for appellees further argue that this improvement, considered as a whole, is a benefit to a special locality and will specially and peculiarly enhance the value of the property in that vicinity; that therefore, under the definitions of "local improvement," this improvement can be held to be one even though it is partially within two municipalities; that none of the decisions in this State except the *Hundley case, supra,* would conflict with such a holding. It is clear from an examination of the cases where this court has discussed the meaning of the phrase "local improvement," as used in said provision of the constitution, it has been understood to be an improvement within and under the control of one municipality. Under

former constitutions in this State all taxes, including special assessments and special taxes, were required to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. (*Murphy* v. *People,* 120 Ill. 234; *Kuehner* v. *City of Freeport,* 143 id. 92, and cases cited.) The same rule obtains now except as to special taxes and special assessments. This provision of the constitution with reference to local improvements being an exception to the general rule as to levying taxes, the public policy of the State, and the dominant principle of the constitution in respect to taxation, ought not to be extended beyond the clear import of the language employed in said exception. *Kuehner* v. *City of Freeport, supra.*

It is earnestly argued that the authority to make an improvement such as the one here in question, by two or more municipalities, in accordance with the provisions of said section 97*a,* would be very beneficial to the municipalities of this State. This argument has little force unless the municipal authorities possess, under the constitution, the right to exercise such powers. "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied." (Dillon on Mun. Corp.—4th ed.—sec. 87; *City of Chicago* v. *Blair, supra.*) Clearly, under the *Hundley case, supra,* these municipalities do not constitutionally possess the powers attempted to be granted by said section 97*a.* That case is squarely in point and must control unless overruled. After a review of the authorities cited and a re-examination of the question we adhere to the conclusion reached in that

case, and are compelled to hold section 97*a* of the Local Improvement act unconstitutional. The decision of this question is decisive of the entire case. We therefore forbear comment on the other points raised on the record.

For the reasons given, the judgment of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE HAND, dissenting.