*In re* CITY OF WOODSTOCK SPECIAL ASSESSMENT FOR THE CONSTRUCTION OF STORM SEWER, CURB AND GUTTER, SIDEWALK, GRAVEL BASE COURSE AND BITUMINOUS CONCRETE SURFACE ON CALHOUN STREET FROM MADISON STREET TO FAIR STREET AND KNOWN AS SPECIAL ASSESSMENT NUMBER 76—(The City of Woodstock, Petitioner-Appellant, *v.* Harold E. Wicks *et al.*, Objectors-Appellees and Cross-Appellants; Rocco P. Dawson *et al.*, Objectors-Appellants).

Second District   No. 82—533

Opinion filed June 9, 1983.—Rehearing denied July 11, 1983.

Michael T. Caldwell, of Caldwell, Berner & Caldwell, of Woodstock, for appellant City of Woodstock.

James A. Campion, of Holmstrom and Green, of Woodstock, for other appellants.

Daniel A. Mengeling, of Johnson and Mengeling, of Woodstock, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

This appeal arises from the levy of a special assessment for an improvement in the city of Woodstock (hereinafter city). Following a hearing on objections to the special assessment, the trial court reapportioned the percentage of public and private assessment for the improvement, reducing the amount that the property owners who had objected would pay. The city appeals that decision. The property own-

ers who had objected (hereinafter objectors) cross-appealed. Other property owners who had not objected to the special assessment until after the objectors' challenges had been heard and ruled on (hereinafter defaulters) also appealed.

In February 1982, the city enacted an ordinance providing for the construction of a storm sewer, curb and gutter, sidewalk, gravel base course, and bituminous concrete surface on a certain section of Calhoun Street. The improvements had been duly recommended by the board of local improvements. Thereafter, the city filed a petition in the circuit court of McHenry County seeking the levy of a special assessment for those improvements. A commissioner was appointed to make an assessment of the cost of the improvement. He found the total cost to be $523,512.69 and designated the amount for the public benefit as $366,433.72 and the private benefit as $157,078.97. He filed an assessment roll in accordance with those figures.

Objections were filed by owners of certain properties included in the assessment roll, including the 27 objectors now appealing and others. In March 1982, an order of partial confirmation was entered against lots whose owners had not appeared or objected, noting that proper notice had been published. The legal objections were tried before the court on May 4, 1982. The court entered an order on May 14, 1982, overruling all objections, reducing the percentage proportion of the total cost of the improvement to 15% as to the objecting properties and raising to 85% the public benefit, and denying the objectors' request for a jury trial. The assessment roll was revised, objections to it and a jury trial on those objections were denied, and on June 10, 1982, the revised assessment roll was confirmed.

On July 8, 1982, other property owners included on the assessment roll, who had not previously objected, filed a motion to vacate the order of confirmation and for leave to file objections to the revised assessment roll. That motion was denied.

The city appealed the reduction of the percentage proportion as to the objectors, the objectors cross-appealed, and the defaulters appealed. The issues presented for review are as follows: (1) whether the improvement for which the special assessment was sought was a local improvement within the meaning of article VII, section 7 of the Illinois Constitution; (2) whether the objectors were entitled to a jury trial on certain objections they raised; (3) whether certain benefited property was erroneously omitted from the assessment roll; (4) whether the trial court has the authority to reduce the amount of private benefit to the objectors' property; (5) whether there was a proper basis in the evidence for the amended apportionment ordered

by the trial court; (6) whether it was error for the trial court to limit the amended distribution of private and public benefit to only those parcels for which objections had been filed; and (7) whether the defaulters should have been permitted to challenge the revised assessment roll, notwithstanding the order of default and partial confirmation entered against them.

■ Article VII, section 7 of the Illinois Constitution of 1970 gives municipalities that are not home rule units the powers to make local improvements by special assessments. In their cross-appeal, the objectors challenge the characterization of the proposed improvement as a "local improvement." They contend that the improvement contemplated is not a local one in that its primary purpose is to benefit the public and it only incidentally benefits the private properties affected.

Local improvement was defined in *City of Chicago v. Blair* (1894), 149 Ill. 310, 314-15, as a public improvement that, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality. In *Loeffler v. City of Chicago* (1910), 246 Ill. 43, 52, the court noted that the test for whether an improvement is local is whether it specially benefits the property assessed; in addition, an improvement may be local even when of some general benefit to the public if the substantial benefits to be derived from it are local in their nature and the portion of the city where the improvement is made will be specially and peculiarly benefited in the enhancement of the property. The court also stated that the test of a local improvement is not its locality or intended use, but whether it will specially enhance the value of the property in its locality. (246 Ill. 43, 46.) In *City of Edwardsville v. Jenkins* (1941), 376 Ill. 327, 330, the court found that whether an improvement is local depends upon whether the benefits arising therefrom are special and local and specially benefit the property assessed, not upon the character of the improvement or the kind of service to be rendered.

The objectors rely on the rule of *City of Waukegan v. DeWolf* (1913), 258 Ill. 374, 381, where the court stated that if the purpose and effect of an improvement are to improve a locality, it is a local improvement even though there is incidental benefit to the public; but if the primary purpose and effect are to benefit the public, it is not a local improvement although it may incidentally benefit property in a particular locality. That rule was reiterated by this court in *Village of Hinsdale v. Lowenstine* (1974), 23 Ill. App. 3d 357.

The city responds that, under article 9 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, pars. 9—1—1 through 9—5—3), the

"benefit" is to be interpreted in terms of the total cost of the improvement and is equal to the assessment. Section 9—2—45 provides that there be an estimate of what proportion of the total cost of an improvement will benefit the public and what proportion will benefit the property to be benefited and then an apportionment of the total cost between the municipality and that property so that each bears its relative equitable proportion. (Ill. Rev. Stat. 1981, ch. 24, par. 9—2—45.) The amount benefiting the property is then apportioned among the several parcels in the proportion in which they will be severally benefited by the improvement, no parcel being assessed a greater amount than it will actually be benefited. The city's argument equating benefit and assessment suggests that if there is any calculable private benefit, a special assessment may be levied. However, the objectors are correct in their argument that there must first be an improvement that falls within the constitutional definition of a local improvement before the levy of a special assessment is warranted.

It has been established that whether a given improvement is a local improvement within the meaning of the constitution is primarily a matter for determination by the corporate authorities. While whether such an improvement is local or general is a question of law, the question of whether the facts in a particular case bring an improvement within the definition of a local improvement is one of fact to be determined by the circumstances established by the evidence. However, the corporate authority's determination that a given improvement is a local improvement within the meaning of the constitution is subject to review by the courts. (*Johnson v. Village of Bellwood* (1930), 338 Ill. 605, 608-09.) The objectors contend that the standard of establishing that a municipality was arbitrary and unreasonable, when challenging a special assessment, applies to the issue of whether an improvement is necessary but not to the issue of whether an improvement is local. However, in *Illinois Central R.R. Co. v. City of Decatur* (1894), 154 Ill. 173, 176, the court found that the power of a city council or board of trustees to declare what shall be local improvements is necessarily implied from the power to make the same in the mode and by the means prescribed in the statute and that a municipality may not declare such an improvement arbitrarily and unreasonably and without reference to benefit. Thus, since deciding when particular circumstances bring an improvement within the definition of a local improvement is a legislative function, as the city urges, that determination will not be overturned unless arbitrary or unreasonable.

Several cases dealing with street improvements have characterized such improvements as local. In *Village of Marissa v. Jones*

(1927), 327 Ill. 180, 189, the paving of the village's main road was deemed a local improvement. While a benefit to the public generally (particularly the part connecting the State hard road through the village), it would also be a particular advantage to the immediate locality and increase the value assessed. In *Village of Glencoe v. Hurford* (1925), 317 Ill. 203, 206, widening a street and taking off sharp angles at certain intersections was found to increase the value of the property specially assessed and therefore to be a local improvement. Those cases followed *Illinois Central R.R. Co. v. City of Decatur* (1894), 154 Ill. 173, 176, where paving a street with brick was considered a local improvement. In *City of Peoria v. Peoria Ry. Co.* (1916), 274 Ill. 48, 50-51, although the widening of a street would improve it for general travel, it would necessarily be a particular advantage to the immediate locality and was therefore a local improvement. In *City of Chicago v. Lord* (1917), 277 Ill. 397, 400, the widening of a street so narrow as to be inconvenient for street uses in connection with private property was a particular and immediate advantage to the locality.

In the instant case, despite the conceded benefit to the public, there was sufficient specific private benefit directed to the objectors' property as distinguished from the municipality as a whole to be derived from the street improvements. There was evidence that the improvement was for a portion of Calhoun Street between Jefferson Street on the west and Country Club/Route 47 on the east. It crossed railroad tracks between Jefferson Street and Seminary Avenue and was to be widened to 28 feet there and conformed to the Illinois Commerce Commission regulations. East of Seminary, it was to be widened to 34 feet from a width of 20 feet, with a new storm sewer, curb, gutter, and sidewalk installed. The project would improve the condition of Calhoun Street and also improve access to the downtown area. In light of this evidence, it cannot be said that the private benefit was only incidental to the public benefit or that the characterization of the improvement as local was unreasonable or arbitrary.

The objectors had filed several objections to the original assessment roll. They contended that the proposed improvement was not a local improvement; that even if the proposed improvement was partially a local improvement, the commissioner's apportionment between public and private benefit was inequitable; that the subject properties would not be benefited to the amount assessed thereon; and that the subject properties were assessed more than their proportionate share of the cost of the improvement. When the hearing commenced on May 4, 1982, it was correctly established by the court and counsel that there was to be a jury trial, preceded by an evidentiary hearing

as to legal objections. At the hearing before the court, the city presented a *prima facie* case by introducing into evidence exhibits reflecting the earlier municipal proceedings and the assessment roll. The objectors then introduced testimony as to the nature, effect, purpose, extent, and cost of the improvement, as well as evidence that the commissioner's division of public and private benefit was incorrect. On rebuttal, the city offered evidence of the local nature and necessity of the improvement and evidence as to how the commissioner arrived at the assessment roll.

Following the hearing, and after much discussion as to the province of the court versus that of the jury, the court ruled orally that the assessment rate be amended from approximately 70% public and 30% private to 85% public and 15% private, that there was no disproportionate assessment as to the assessment roll, and that all objections were disposed of and the request for a jury trial was denied. This was confirmed by written order. Later requests for a jury trial regarding the revised assessment roll were also denied.

■ In this cross-appeal, the objectors urge as error the denial of the request for a jury trial on the objections that their property would not be benefited to the amount assessed against it and that the property was assessed more than its proportionate share of the cost of the improvement. The city's response is that if this court reverses the trial court's amendment of the assessment roll, thus reinstating the original assessment roll, then the objectors would be entitled to a hearing before a jury; but it would be manifestly unfair to grant a jury trial on the roll as modified, which would allow two hearings on the same subject.

Section 9—2—57 of the Illinois Municipal Code, under which the objectors' legal objections were heard, provides:

"[T]he court may set down all objections, except the objection that the property of the objector will not be benefited to the amount assessed against it, and that it is assessed more than its proportionate share of the cost of the improvement, for a hearing at a time to be fixed by the court. ***" (Ill. Rev. Stat. 1981, ch. 24, par. 9—2—57.)

Section 9—2—58 provides:

"If it is objected on the part of any property assessed for such an improvement, that it will not be benefited thereby to the amount assessed thereon, and that it is assessed more than its proportionate share of the cost of the improvement, and a jury is not waived by agreement of parties, the court shall impanel a jury to try that issue. ***" (Ill. Rev. Stat. 1981, ch. 24,

par. 9—2—58.)

These two questions are so important that, unless the privilege is waived by the property owners, they are entitled to a jury trial; it is the plain intent of the law that legal objections shall be heard separately and apart from these issues. *Doran v. City of Murphysboro* (1907), 225 Ill. 514, 518-19.

Whether a plan for distribution of costs is equitable is a legal question to be decided by the trial court (*In re Village of Palos Park* (1980), 82 Ill. App. 3d 328, 331), as is the issue of whether an improvement is a local improvement. Thus, those two legal issues were within the scope of the hearing before the trial court in the present case. Our review of the hearing indicates that, while the evidence presented challenged the characterization of the improvements as local and the proportion of private benefit on the original assessment roll, the purpose of the hearing was not to prove that particular property was not benefited to the amount assessed or was assessed more than its proportionate share of the cost of the improvement. Since the nonlegal issues were not even presented, the trial court had no basis for deciding them. Since they were not waived, the objectors were clearly entitled to a hearing before a jury as to those issues. It was error for the trial court to deny them a jury trial.

In their cross-appeal, the objectors also posit that certain land west of the tracks, whose private benefit derived from the improvement was determined by the commissioner to be $31,400, should have been included in the assessment roll. On instructions from the city, the commissioner did not include the parcels in that section on the assessment roll. The city's policy was that, once an area had a permanent municipal-type curb and gutter, no assessment would be made whether or not that curb and gutter had been made by special assessment. The objectors point out that the curb and gutter portion of the entire six-block improvement area was $33,267.92. They conclude that, therefore, the cost of replacing the curb and gutter west of the tracks was only a small part of the project cost, suggesting that at least the balance of the benefit should have been assessable against them. The city replies that, since no part of the benefit west of the tracks was spread against any other property, the objectors did not meet their burden of showing that the city's policy that a property pay for a curb and gutter only once was oppressive, arbitrary, or unreasonable. The city's arguments are persuasive.

■ The railroad tracks were located between Jefferson Street (the west edge of the improvement) and Seminary Avenue. In that stretch, not only were curbs and gutters omitted, but no sidewalks

were being constructed there and the roadway would be widened to 28 feet rather than to the 34 feet width east of Seminary Avenue. The objectors' argument does not take into account the fact that, after the trial court reduced by one-half the percentage of private benefit accruing from the improvement, the amount of private benefit in excess of the cost of the curbs and gutters would have been substantially less and that the benefit from the sidewalk might also have been deducted. Thus there is no showing that the property west of the tracks is still benefited in excess of the curbs and gutters and sidewalks. Moreover, if the city agrees to bear the cost of whatever benefit might remain, for policy reasons, the assessment against the objectors will not be affected and therefore they will not be harmed. In *Gordon v. Gordon* (1955), 6 Ill. 2d 572, 574, the court stated that it is elementary that an appellant can assign as error only rulings that are prejudicial as to him, citing *City of Mattoon v. Jennings* (1929), 336 Ill. 93. In that case, the court held that an appellant may not urge the objection that other property owners have been omitted from an assessment roll. (336 Ill. 93, 99.) Thus, the objectors' assertion of error fails.

■ The city initially posits that the ruling of the court in adjusting the proportions of public and private benefit was beyond and outside the law and arbitrary. The city believes that the objections were argued at the hearing before the court pursuant to sections 9—2—57 and 9—2—58 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, pars. 9—2—57, 9—2—58) and did not invoke the court's summary powers under section 9—2—56 of the Code. The city suggests that section 9—2—56 simply contemplates a separate pretrial procedure and that the court's powers thereunder may not be used at the end of a hearing convened for another purpose.

Section 9—2—56 gives the court "the power, on such application being made, to revise and correct the assessments levied, to change or modify the distribution of the total cost between the public and property benefited ***." (Ill. Rev. Stat. 1981, ch. 24, par. 9—2—56.) Section 9—2—57 provides in pertinent part that the court may set down all objections, except those reserved for the jury, and upon hearing shall determine all questions relating to the distribution of costs of the improvement between the public and the property. Thus, as the objectors note, the court was clearly authorized to hear and decide the private/public benefit apportionment issue. That issue was one of the objections raised by the objectors and before the court. We disagree with the city's contention that the order of statutory provisions controls the order of proceeding and determining issues arising

from those provisions.

Moreover, where a court finds that the apportionment of costs of an improvement between the public and the property benefited is not equitable and just, it has a duty to change or modify the distribution accordingly. (*City of Green Rock v. Van Opdorp* (1966), 74 Ill. App. 2d 203, 205.) Thus, not only was the court acting within its proper authority, but it was exercising a duty.

The city next contends that, even if the trial court was acting under proper authority, there was no legal basis in the record to support its order. The city states that the commissioner and the objectors' expert, who both offered testimony as to the spread of public and private benefit, used different appraisal approaches. According to the city, the evidence merely indicates a difference of opinion and falls short of establishing a ground for modifying the commissioner's decision. The city also charges that the objectors introduced no evidence of the fair market value of the objectors' property before the assessment and urges that this failure of proof is fatal to the objection regarding the spread of benefits.

The objectors respond that the standard to be applied is whether the trial court's decision is against the manifest weight of the evidence. They note that the statute provides for review by the court and argue that this can occur only by hearing conflicting opinion testimony from qualified appraisers, supplemented by additional factual matter and challenged by cross-examination. The additional evidence relied on by the objectors includes testimony as to the purpose of the improvement in connecting Route 47 to the central business district (making Calhoun Street one of three arterial streets between the city's two areas of major commercial development and redevelopment); the conformance of the approach to the tracks to Illinois Commerce Commission regulations (ostensibly for safety purposes); and transition of the area during the next 10 to 20 years from an older residential neighborhood to two-family, office, and other commercial uses. The objectors also suggest that the court was justified in discounting the opinion of the city appraiser, based on his experience and his method of comparison.

At the hearing, the commissioner testified that his determination of whether the amount assessed against the properties exceeded the benefits was based on a "match-pair" theory, which compares the sales of two parcels that are similar except as to the item being appraised. He compared fully improved lots with unimproved lots and therefore discounted any value of existing improvements in arriving at his opinion. He was aware that the objectors' property had a side-

walk, which he said did not add to the value of the property in its present condition, and a "V" gutter. He stated that he used 40 to 50 sales in his analysis. He later said that he used two comparables—the sale of improved and unimproved duplex lots, with a difference of $50 per frontage foot. When he totaled the increase in value, it was about $280,000 or 54% of the total project cost. About $250,000 of this was allocated to the property east of the tracks. This exceeded the amount that the city had advised him would be spread among private properties after the city picked up its share of the cost, including what would be paid under FAUS funds. After that adjustment, the private share came to about 30% of the cost of the improvement.

The objectors' expert inspected and analyzed all 27 properties of the objectors and investigated the surrounding area to become familiar with environmental facts such as zoning and commercial development. He gathered sales data and estimated the value of individual lots in the improvement area and established a value estimate assuming all the improvements were completed. After arriving at a top value applicable to the project area with improvements in place, he compared sample lots and arrived at individual property values for each parcel. He calculated a total value before and after the improvement and found a $25,700 difference or 5%. He used 22 vacant lots for analysis, most of which had some or all of the improvements—curb, gutter, sidewalk and paved street. He also used improved residential property and multifamily parcels.

■ Under section 9—2—56 of the Illinois Municipal Code, the statutory standard for a trial court's inquiry into the distribution of costs between the public and the private is whether it is just and equitable. Most of the cases that discuss the standards for reviewing benefit deal with assessments as to individual properties, but since that is the general basis of the composite private benefit, some of the principles are applicable. The basis of an assessment is the proportionate enhanced market value of the property. (*In re Village of Palos Park* (1980), 82 Ill. App. 3d 328, 332.) An assessment roll is *prima facie* evidence that the objectors' properties are benefited to the extent shown. To overcome the *prima facie* case made by the introduction of that roll, the objectors must show the fair cash market value of the property before and after the improvement, and a conclusional statement of an expert is not sufficient. (*In re Petition to Levy a Special Assessment for Construction of Sidewalks* (1973), 10 Ill. App. 3d 243, 246.) A reviewing court will not disturb a finding on the question of benefits unless it is clearly and palpably against the manifest weight of the evidence. Where the assessments fixed by the trial court are

within the range of the testimony as to private benefit, they need not match the figures given by either side. *In re Petition to Levy a Special Assessment for Paving Improvement* (1973), 15 Ill. App. 3d 357, 360.

■ Here, there was evidence that both appraisers determined what they considered to be the value of the property in the area assessed with and without the proposed improvement. That difference was the basis for their respective apportionments of private and public benefit. They offered explanations of their methods of analysis, which gave the trial court a means of evaluating their conclusions. This was not simply a case of opposing conclusional opinions. The court reasonably could have found that each was incorrect to some extent, based upon the factors they considered and their credibility. The trial court's adjustment of the private proportion of benefit to 15%, a figure within the range of testimony, had a sound basis and was not against the manifest weight of the evidence.

■ Next we determine whether it was error for the trial court to limit its amended distribution of private and public benefit to only those parcels for which objections had been filed. An order of partial confirmation of the original assessment roll was entered by default on March 16, 1982, against those property owners included on the assessment roll who had not appeared or objected. After the court reduced the percentage of private benefits, certain of those property owners (the defaulters) attempted to object. On July 9, 1982, the court entered an order against them, denying their motion to vacate the judgment of confirmation and their motion for leave to file objections to the revised assessment roll. The defaulters contest that order.

The city argues that the defaulters' appeal to this court is untimely under section 9—2—140 of the Illinois Municipal Code, which prohibits appeals after 30 days from the entry of the final judgment or order. (Ill. Rev. Stat. 1981, ch. 24, par. 9—2—140.) The city urges that the judgment as to the defaulters was final on March 16, 1982. However, although the March 16 order is relevant to the merits of the appeal, it is not the order from which the defaulters are appealing. Their appeal is timely as to the order of July 9, 1982.

The defaulters argue that the court erred in applying the amended 85% public benefit and 15% private benefit to only those parcels for which objections had been filed against the original assessment roll. They characterize this as a "dual standard" with respect to public versus private benefits and assert that a dual standard is contrary to the express provisions of the statutes relating to special assessments and also violates constitutional provisions for equal protection and due

process. The city replies that all procedural requirements (*e.g.*, filing of the assessment roll and proper notice) were observed prior to the entry of the order of partial confirmation and that there is no impropriety or illegal defect in entering judgment by default against unobjecting properties.

The defaulters charge error in the court's failure to apply the reduced amount of private benefit to them. However, as they acknowledge, at the time the court entered its judgment ordering the assessment roll to be revised as to the objectors, the default judgment of partial confirmation was clearly in effect against the defaulters. In fact, the defaulters did not appear before the court at all until nearly a month after the revised assessment roll was confirmed. We find no impropriety in the entry of that default, nor has any reason been shown for the trial court to have ignored that judgment and applied the reduced private benefit to the defaulters.

The entry of the default judgment was authorized under section 9—2—55, which provides that "[a]s to all lots, blocks, tracts, and parcels of land, to the assessment of which objections are not filed within the specified time, or such other time as may be ordered by the court, default may be entered, and the assessment may be confirmed by the court, notwithstanding the fact that objections may be pending and undisposed of as to other property." (Ill. Rev. Stat. 1981, ch. 24, par. 9—2—55.) The legislature did not expressly limit this section to apply only to particular objections but apparently intended that default judgments could be entered against any property that filed no objection, regardless of the nature of unresolved objections raised by other properties.

The authority of a court to enter a default in such circumstances has been upheld from an early date. In *Dalamater v. City of Chicago* (1895), 158 Ill. 575, 579-80, the court upheld the entry of a default judgment confirming an assessment upon failure of certain property owners to appear, noting that the judgment of confirmation as to each tract of land is a several judgment. In *Markley v. City of Chicago* (1897), 170 Ill. 358, 360, the court noted that a defaulted party is deemed to have confessed all that is well alleged against him in the pleadings. The court also stated that he may nevertheless on review urge that, admitting all that is well alleged, the judgment against him is unwarranted. Here, however, the defaulters do not suggest that the entry of the default judgment was unwarranted but rather challenge the refusal of the trial court to apply its subsequent judgment to them, notwithstanding the default judgment.

The defaulters argue first that the revised assessment roll was patently erroneous in that the assessment roll could be recast only in such

a way that the new assessment against the individual parcels collectively would not exceed the total amount of local benefit. In their view, the trial court's determination that the local benefit was 15% rather than 30% was a conclusion of fact that could not logically vary from parcel to parcel. They posit that the statute contemplated a uniform application of the private apportionment of the cost of improvements to all parcels, whether or not they objected. However, such an interpretation would emasculate the provision for default, which is specifically allowed even when objections are pending as to other property. When faced with a question of statutory interpretation, we are not free to disregard one part of a statute in favor of another; rather, we must read the act as a whole, according significance and effect, if possible, to every sentence, phrase, and word, without destroying the sense and effect of the law, so that no word, clause, or sentence is rendered meaningless or superfluous. (*Davis v. Attic Club* (1977), 56 Ill. App. 3d 58, 62.) Thus, the provision for default must be viable.

In addition, other sections of the statute also demonstrate that the legislature did not contemplate that judgments be equally applied to all parcels in all circumstances. Section 9—2—65 describes the effect of judgments of the court. They shall be final as to all the issues involved; a judgment shall have the effect of several judgments as to each tract or parcel of land assessed; no appeal from any such judgment shall invalidate or delay the judgments, except as to the property concerning which the appeal is taken; and the judgment shall be a lien on behalf of the municipality making an improvement. The courts have strictly applied the provision that a judgment on appeal applies only to the particular property for which the appeal was taken and has no effect on the other several judgments.

In *Kelly v. City of Chicago* (1893), 148 Ill. 90, 95, the court held that an earlier appeal affected only the property owners who had participated in the appeal, even though the appeal dealt with the same assessment roll then being challenged by property owners who had not joined the earlier appeal. In *City of Chicago v. Partridge* (1911), 248 Ill. 442, 446, the court determined that an earlier judgment in a former proceeding, holding that jurisdiction over a particular area did not exist for purposes of making a proposed improvement, did not operate under the doctrine of *res judicata* to bar an assessment against a property owner who had not then objected but whose property was in that area. The court noted that a judgment of confirmation against one tract is in nowise affected by the reversal of that judgment as to another tract, so a judgment sustaining objections as to one tract could not be interposed as an estoppel or bar to an assessment in another proceeding.

248 Ill. 442, 454.

A trilogy of cases applying that principle began with *Vennum v. Village of Milford* (1903), 202 Ill. 423, 426, where the ordinance on which an assessment was based was held invalid on the ground that no legal petition was presented to the board of local improvements. In *Sumner v. Village of Milford* (1905), 214 Ill. 388, the appellants argued that the *Vennum* reversal of the judgment as to the tract owned by Vennum operated to set aside the tax as to their property also. Although the facts alleged on appeal were the same as those stated in the *Vennum* case, the court held that the *Vennum* reversal had no effect as to any other piece of property. (214 Ill. 388, 390-91.) In *Goldstein v. Village of Milford* (1905), 214 Ill. 528, 532, the court also refused to apply *Vennum* to void the judgment of confirmation in a proceeding to enforce payment of the assessment, noting that under the statute a judgment of confirmation had the effect of several judgments and that an appeal from one judgment would not affect other judgments.

▮ Applying these principles to the present issue, those who chose not to appeal may be compared to the defaulters. It is clear that, even where issues have been settled by the court, failure to participate in their adjudication is reason enough for being denied the benefit of favorable judgments. Thus, the defaulters' argument that the statute itself precludes the action of the trial court in reducing only the objectors' private benefit fails. The default was properly entered. As a result, the defaulters were not a proper target of the court's order, and the statute and cases do not permit those who do not pursue their rights in a timely fashion to enjoy the results obtained by those who do.

The defaulters also raise a constitutional objection to the trial court's order. They argue that, by reducing the private responsibility for the improvement only as to the objectors, the court created a new classification that was arbitrary and unreasonable in violation of State and Federal constitutional guarantees of equal protection and due process.

The principles of equal protection are well established. Illinois constitutionally mandates that taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law. (Ill. Const. 1970, art. IX, sec. 4.) In *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 423, it was determined that the legislature has the power to classify real property in assessing taxes. When it does, there is a presumption favoring the validity of the classification, and the one assailing it has the burden of showing that the classification is arbitrary. The reasons justifying the classification need not appear on the face of the statute, and the classification must be upheld if any state of facts

can reasonably be conceived that would sustain it. The equal protection question, therefore, is whether there exists a rational basis for the provision. 69 Ill. 2d 402, 425.

The authority to make local improvements by special assessment is granted by article VII, section 7 of the Illinois Constitution of 1970. The requirement of uniformity with respect to persons and property that applies to taxes is omitted for local improvements by special assessment or special taxation. (*Murphy v. People ex rel. Weiennett* (1887), 120 Ill. 234, 241.) However, so far as practicable all property affected should bear the burden of local improvements equally, but this principle of uniformity and equality applies only to the property benefited by local improvement and not to other property in the municipality. *City of Chicago v. Smith* (1923), 310 Ill. 244, 245-46.

The defaulters' position is that the trial court's "creation of a new classification" by applying a "dual standard" was arbitrary and unreasonable. However, since we have determined that the provision for default was intended to apply here and that the effect of the default judgment was that the court acted properly in applying its order to only those who objected, the crux of the equal protection issue is whether the provision permitting entry of default judgments violates equal protection since it may result in a class of property being assessed at different rates for the same local improvement.

The statute merely provides a process through which two different groups of property owners may result: those who object and those who do not. Due process is satisfied by the notice requirement (*Citizens' Savings Bank & Trust Co. v. City of Chicago* (1905), 215 Ill. 174, 176), and all property owners have an equal opportunity to appear and challenge the assessment roll. There is no discrimination at that point. It is the nonobjectors who, by defaulting, place themselves in a group that will potentially be treated differently from those who object.

Moreover, this statutory potential for the objectors to receive an advantageous judgment not available to the defaulters does not violate equal protection. A somewhat analogous issue was addressed in *Hundert v. Bieszczat* (N.D. Ill. 1981), 526 F. Supp. 1051, which dealt with the Illinois tax refund system. Under the refund system, if a tax levied in a given year was eventually found to be excessive, all taxpayers who paid taxes under written protest automatically would receive appropriate refunds. The refunds would represent the same proportion of each taxpayer's bill that the portion of the rate illegally levied bore to the total rate for the tax year involved. The issue was whether providing refunds to only those taxpayers who had filed objections, rather than to all taxpayers, violated the equal protection clause. In its analysis, the

court first determined that the class consisting of Illinois taxpayers who do not file objections is not a "suspect class"; therefore, the Illinois law would violate the equal protection clause only if there were no rational basis for the distinction drawn. The court concluded that there were many reasons that would support the distinction, such as the undue burden that might result if the taxing authorities themselves had to determine precisely who was currently entitled to a refund.

In the instant case, not objecting to the assessment roll and consequently having an assessment confirmed by default is similar to paying a tax without protesting its validity and as a result being denied a refund of any overassessment. There could be many rational bases for the default provision, such as encouraging property owners to appear and raise any objections at the proper time so that problems may be expeditiously resolved. There could also be valid reasons for the conclusiveness of the judgment and the inability of the court later to change the rate based on objections as to other property; since the effect of a judgment is to give the municipality a lien on property for which the assessment roll has been confirmed, there may be reasons for the city to rely on that lien.

The defaulters have not met their burden of showing that there was no rational basis for the difference in rates that resulted from the default. Simply relying on the actual result—the levy of the special assessment at different rates based on the separate judgments against the defaulters and the objectors—is not enough in light of the statutory authority for default and the defaulters' own responsibility for their plight. This is not an instance where the municipality levied an assessment that was inherently discriminatory as to certain property; the original assessment roll apportioned 30% of the cost of the improvement among the affected property, ostensibly according to the proportionate share of each tract. Rather, the so-called "dual standard" can be attributed solely to the defaulters' failure to exercise their right to object.

Finally, the defaulters contend that, even if the trial court properly applied its order only to the objectors and the order of default and partial confirmation stands, it does not bar them from objecting to the revised assessment roll on the ground that it applies a patently erroneous dual standard of private versus public benefit. The defaulters rely on a statement in *Johnson v. People ex rel. Kochersperger* (1898), 177 Ill. 64, 67: "If a valid reason arose, after the default and judgment were entered, for setting them aside on account of a change in the conditions upon which they were entered, application should have been made to the county court." The defaulters believe that what they char-

acterize as a dual standard in determining public versus private benefit is such a change in conditions. However, we have already determined that the court's judgment reducing the private benefit presented no basis for amending the judgment as to the defaulters. The defaulters cite *Chicago & Western Indiana R.R. Co. v. City of Chicago* (1907), 230 Ill. 9, where a property owner who was defaulted for failure to object was permitted to challenge a revised assessment roll. However, there the revised roll increased the amount assessed to the defaulter's property, and the increase was made without authority of the court. Here, the revised assessment roll altered the figures in the original assessment roll only as to the objectors; the assessments against the defaulters remained unchanged from the original assessment roll. Although the defaulters' property appeared on the revised assessment roll, the earlier default judgment, several in nature, controlled, and the revised assessment roll in no way affected them.

■ It is true that the defaulters had no way of knowing that the court ultimately would reduce the private benefit. However, neither did they attempt to become involved in the process until after a result was reached that was favorable to the objectors. (They did not move to set aside the default judgment within 30 days in accordance with section 2—1301(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1301(e)) or attempt to reopen the judgment under section 2—1402 (Ill. Rev. Stat. 1981, ch. 110, par. 2—1402).) At that point, although presumably they had borne no share of the expense and effort of litigating the issues diligently raised by the original objectors, they wanted to be included in the outcome. To allow them to sit back and wait for the result of the hearing as to the objectors who did properly challenge the assessment roll and then take advantage of a favorable ruling is not permissible.

The judgment of the circuit court of McHenry County is affirmed except as to its order denying the objectors a jury trial on the benefit issue.

Affirmed in part; reversed in part and remanded.

HOPF and NASH, JJ., concur.